Frank E. READY, Petitioner,

v.

UNITED STATES PAROLE COMMISSION, Warden Fenton, Respondents.

Civ. No. 79–958.

United States District Court,
M. D. Pennsylvania.

Feb. 4, 1980.

As Amended March 31, 1980.

---

Frank E. Ready, pro se.

Frederick E. Martin, Asst. U.S. Atty., Lewisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

Ready, an inmate at the United States Penitentiary at Lewisburg, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 alleging that the Parole Commission improperly rescinded his parole. The case was referred to United States Magistrate Quinn to conduct necessary proceedings and to make his report and recommendation to the Court. On August 1, 1979, the Magistrate issued a rule to show cause. On August 6, 1979, Ready filed an amended petition. On August 8, 1979, Ready was directed to file a further amendment indicating whether he had exhausted administrative remedies. An amended petition was filed on August 13, 1979. The Respondents filed their answer on August 20, 1979. Ready filed a traverse on September 14, 1979. On October 1, 1979, Respondents filed a supplemental brief in opposition to Ready's petition which was supported by documents filed on October 2, 1979. On November 13, 1979, Ready filed additional documents. Because of the lengthy illness of Magistrate Quinn of which the Court became aware in January, 1980, the case was reassigned to this Court which will rule on Ready's petition without the benefit of a Magistrate's Report. For the reasons which follow, the Court will

order Ready released on parole unless a new parole rescission hearing is held within 30 days of the date of the order accompanying this opinion.

Ready began his term in federal custody following the imposition of a five-year term of imprisonment on November 8, 1974 by the United States District Court for the Eastern District of Missouri upon Ready's conviction for interstate transportation of forged securities. On October 12, 1976, Ready was sentenced to a term of 15 years in prison following his conviction for conspiracy, filing false tax claims and cashing refund checks in the United States District Court for the District of Kansas. This sentence was to be served consecutively to the five-year term previously imposed.

Ready received his initial parole hearing on August 3, 1977. By notice of action dated August 16, 1977, he was advised that parole had been denied and that his case had been continued for review in August, 1979. By notice of action dated May 2, 1978, the National Appeals Board of the Parole Commission established an effective date of parole of November 7, 1978 through a community treatment center.

In August, 1978, the Northeast Regional Commissioner of the Parole Commission received letters from the United States Attorney in Kansas and the Internal Revenue Service which expressed shock that Ready was to be paroled. By notice of action dated September 22, 1978, Ready was advised that his case had been reopened pursuant to 28 C.F.R. § 230.34(b) (1978) and that a rescission hearing had been scheduled. A supplemental statement of the charges against Ready was included in a notice of action dated November 21, 1978. This notice advised Ready that possible basis for rescission included his alleged advice to inmates at the United States Penitentiary at Leavenworth, Kansas of how to obtain money fraudulently from the IRS, Ready's holding himself out as an officer of the Court and issuing false subpoenae to various governmental agencies and his progress while at the community treatment center. Prior to the rescission hearing, Ready's counsel sought permission to call witnesses at the proceeding and to cross examine adverse witnesses. The Parole Commission's counsel advised Ready's attorney that cross examination was not permitted at rescission hearings nor were witnesses allowed to be present although statements from witnesses would be considered. Information on which the decision could be based was disclosed to Ready's attorney prior to the rescission hearing in a letter dated November 21, 1978.

An examiner panel of the Parole Commission conducted a rescission hearing on December 5, 1978 at Lewisburg. By a notice of action dated December 27, 1978 Ready was advised that his parole was rescinded and a presumptive parole date of December 5, 1980 had been established. Ready filed an administrative appeal to the Northeast Regional Office. By notice of action dated February 13, 1979 the Regional Office affirmed the examiner panel's decision but modified the reasons. As modified, Ready's parole was rescinded because the Commission found that he had supplied information to inmates at Leavenworth instructing them how to obtain money fraudulently from the IRS, that Ready falsely held himself out as an officer of the Court and issued false subpoenae to various governmental agencies, and that he adjusted poorly to the halfway house placement by continual curfew violations. Ready filed an appeal to the National Appeals Board which affirmed the Regional Office's decision by notice of action dated July 9, 1979.

Ready alleges several deficiencies in the parole rescission process. First, the Commission allegedly failed properly to institute the rescission process. Second, the National Appeals Board allegedly did not render a decision in a timely manner. Third, the Commission allegedly violated its own regulations in moving to rescind Ready's parole because much of the information which led to that action was not new information as required by 28 C.F.R. § 2.34(b) (1978). Fourth, Ready allegedly was denied due process of law at the rescission hearing because he was not permitted to call wit-

nesses in his behalf or to cross examine adverse witnesses. Fifth, the Commission's decision to retard his parole was allegedly arbitrary and capricious.

■ Ready's first two claims require but little comment. The uncontroverted affidavit of the Commission's regional counsel demonstrates that the Commission complied with 28 C.F.R. § 2.34(b) (1978) in obtaining the approval of the National Commissioners in re-opening Ready's case. Although the Commission did not comply with 18 U.S.C. § 4215(b) in that its decision on Ready's appeal of his rescission was issued 45 days beyond the 60 days provided, Ready was not prejudiced by that delay. Cf. U. S. ex rel. *Fitzpatrick v. U. S. Parole Commission,* 444 F.Supp. 1302 (M.D.Pa.1978). Consequently, neither claim is a ground for relief.

Title 28 C.F.R. § 2.34(b)(1) (1978) provided for the rescission of parole "[u]pon receipt of new information adverse to the prisoner regarding matters other than institutional misconduct." Ready takes the position that the Commission was aware of his alleged involvement in aiding prisoners at Leavenworth to obtain fraudulent refunds from the IRS at the time the Commission made its initial decision to grant him parole on November, 1978. This claim is supported by a letter Ready sent to the Commission following his parole hearing on August 3, 1977. That letter discusses the allegations that Ready was involved in the prisoner's IRS fraud at Leavenworth and denies any involvement. Ready's mention of the Leavenworth incident was in response to the hearing summary of his August 3, 1977 initial parole hearing. That summary states that his indictment and "subsequent conviction for income tax fraud, was part of the Leavenworth prisoner tax fraud case." Ready felt that that statement was inaccurate and, in his letter to the National Appeals Board, stressed that his income tax conviction was unrelated to the prisoner tax frauds at Leavenworth.

The Respondents do not contest that they received this letter from Ready. They maintain, however, that the new informa-

tion which caused the Commission to reopen Ready's case was a letter dated August 23, 1978 to the chairman of the National Appeals Board from the United States Attorney for the District of Kansas which stated that while an inmate at the United States Penitentiary at Leavenworth, Ready:

knowingly supplied information to fellow inmates concerning the methods by which he fraudulently obtained money from the Internal Revenue Service. This information was used by other inmates to file additional false tax returns with the Internal Revenue Service . . . . . Mr. Ready confessed to having supplied this information to fellow inmates in a statement given to representatives of the United States Attorney's Office and the Internal Revenue Service during the month of November 1977.

In addition, the United States Attorney charged that during the months of December, 1976 and January, 1977 "Mr. Ready fabricated his own subpoenas and sent these spurious subpoenas to various government agencies to Kansas, Missouri and the District of Columbia." The Commission also received a letter from the Internal Revenue Service which made similar allegations against Ready with respect to the prisoner tax frauds at Leavenworth. The Respondents maintain that until the receipt of those letters, the only information they had about Ready's involvement with the tax fraud at Leavenworth was Ready's denial.

■ The Court cannot accept the Respondents' argument that the information received from the U.S. Attorney and the IRS was new information within the meaning of 28 C.F.R. § 2.34(b)(1) (1978). The Commission was aware of Ready's possible involvement in the prisoner tax fraud at Leavenworth at least as of the date of his letter to the National Appeals Board. Acting on that information, the Appeals Board reversed the decision of two lower level panels and granted Ready a parole date of November, 1978. The Commission had the opportunity at that time to seek additional information with respect to Ready's alleged

involvement if the members thought it was important to the decision whether to grant Ready parole. Their failure to seek such information about an event brought to their attention precludes them from relying upon subsequently discovered information to rescind Ready's parole.

This case is distinguishable from that of *Bonomo v. McCall*, Civil No. 79–1396 (M.D.Pa. Dec. 10, 1979) in which this Court held that the Parole Commission could reopen a prisoner's case based upon the occurrence of an institutional disciplinary violation which occurred prior to the setting of a final parole date because it did not appear in that case that the Commission had any notice of the violation when it set the parole date. In this case, the Commission had before it Ready's letter concerning the events at Leavenworth and chose not to pursue the matter. The Commission cannot now, under the guise of new information, rescind Ready's parole after receiving letters from the Internal Revenue Service and the United States Attorney which strongly objected to Ready's release on parole.

█ The information concerning Ready's use of subpoena and his adjustment to the community treatment center was new information within the meaning of 28 C.F.R. § 2.34 (1978) because there is nothing in the record to indicate the Commission was aware of the information prior to the decision to hold a rescission hearing. Because the Court cannot determine whether the Commission would have moved to rescind Ready's parole or whether it would have rescinded Ready's parole if it had not considered the letters from the I.R.S. and the U.S. Attorney concerning the Leavenworth tax fraud, the Court will order Ready released on parole unless a new determination is made that the new information warrants a rescission hearing.

Since Ready may face a new hearing, the Court will address Ready's due process claims. Ready argues that the Commission's policy of excluding witnesses for the prisoner and of prohibiting cross examination of adverse witnesses in all parole rescission cases violates a prisoner's Fifth Amendment rights to due process of law.

Respondents contend that the giving of written notice of the information to be considered at the parole rescission hearing, disclosure of copies of the final progress report of the community treatment center and letters from the U.S. Attorney and the I.R.S., the opportunity to be represented by an attorney who is only allowed to make a statement at the conclusion of the hearing, and the opportunity to submit written statements of witnesses constitute sufficient due process. The Commission's position is supported by Courts of Appeals' decisions in the Seventh and Tenth Circuits, *Robinson v. Benson*, 570 F.2d 920 (10th Cir. 1978); *Christopher v. United States Board of Parole*, 589 F.2d 924 (7th Cir. 1978). The Court of Appeals for the Second Circuit has held that a prisoner facing parole rescission is entitled to procedural protection approaching that of a person facing parole revocation. *Drayton v. McCall*, 584 F.2d 1208 (2d Cir. 1978).

The Commission submits that the right to call witnesses and the right to confront adverse witnesses which are provided in parole revocation hearings, *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) are not applicable to parole rescission hearings because the prisoner's liberty interest in release on parole on the effective date of parole is not as great as the liberty interest of a person currently on parole. In addition, the location of a parole rescission hearing, which is held in the prison, is similar to that of prison disciplinary proceedings at which there is a limited right to call witnesses and no right to cross examine witnesses. *Wolff v. McDonnell*, 418 U.S. 539, 567, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

█ In determining whether a prisoner facing parole rescission should be afforded the opportunity to call witnesses and to cross examine adverse witnesses, the Court must find the proper balance between the interests of the prisoner and of society. *Drayton v. McCall*, 584 F.2d 1208, 1218 (2d Cir. 1978); *Christopher v. United States Board of Parole*, 589 F.2d 924, 929–30 (7th Cir. 1978); see *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18

(1976); *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The grant of an effective date of parole does not contain the same expectation of liberty as does actual release on parole, *see Christopher v. United States Board of Parole,* 589 F.2d 924, 930 (7th Cir. 1978). Although a prisoner in Ready's situation can legitimately believe he is closer to release from incarceration than one who has been denied parole, that belief does not warrant more procedural protection than was provided to Ready in this case.

Once an effective date of parole is set, parole may be delayed under certain circumstances not here relevant, 28 C.F.R. § 2.29(c) (1978); 28 C.F.R. § 2.34(a) (1979), but may not be rescinded unless the prisoner is found to have committed an institutional disciplinary violation, 28 C.F.R. § 2.34(a), or upon receipt of new information adverse to the prisoner and unrelated to a prisoner's institutional misconduct. 28 C.F.R. § 2.34(b) (1978); 28 C.F.R. § 2.28(f) (1979). This led the Court of Appeals for the Second Circuit to conclude that a prisoner's interest in his future parole is protected by the Due Process Clause even under *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) which require a justifiable expectation in law or in regulations that unpleasant consequences will befall a prisoner only under certain circumstances provided in the law or regulations. *Drayton v. McCall,* 584 F.2d 1208, 1214 (2d Cir. 1978).

■ This Court is unable to reach that conclusion. The two grounds for moving to rescind parole—institutional misconduct and new information adverse to the prisoner unrelated to institutional misconduct—relate to the same matters considered by the Commission when the decision to grant parole is made. Had the new information been received prior to rather than after the Commission set an effective date of parole, a prisoner would receive only the procedural protection afforded a prisoner facing the Commission for the first time. The fact that adverse information was not known to the Commission until after an effective date of parole had been set does not give a prisoner more procedural rights.

■ Until actually released on parole, a prisoner can legitimately expect release only if he does not violate institution rules and if no new adverse information is received by the Commission. While he has control over the former, a prisoner has no control over the latter and his hope that no adverse information will reach the Commission is not entitled to the procedural protection afforded a parolee. This is true even if, as in Ready's case, he was at a community treatment center and was experiencing more freedom than he enjoyed at Lewisburg. Because the grant of parole rests in the discretion of the Commission and because the Commission considers new information up to the moment of release, the Court concludes that the individual conditions of confinement to which a prisoner is subjected prior to release do not warrant different measures of procedural protection before parole may be rescinded. The constitution does not require different rules for prisoners at Lewisburg Penitentiary, Allenwood Prison Camp, or community treatment centers.

The government's interest in the parole rescission setting is no less than its interest in the original parole situation. As set forth in *Christopher v. United States Board of Parole,* 589 F.2d 924 (7th Cir. 1978), the Government has a substantial interest in the relatively quick rescission of parole if it is discovered that the prisoner is an improper candidate for parole. This interest is particularly strong if the Government discovers that its decision to grant parole was based on false premises. In addition, the Government has a strong interest in rescinding an improper determination that a prisoner is to be paroled because there is the chance that the public will suffer when such a person is released. *Christopher v. United States Board of Parole,* 589 F.2d 924, 930–31 (7th Cir. 1978). The Government's interests are served by a proceeding which is relatively expeditious and which provides a factual basis for the Commission

to exercise its expertise in determining whether the rescission of parole is warranted.

The attendance of defense witnesses who are able to provide relevant information is not constitutionally mandated in order to provide a sufficient factual basis to make a rescission decision. Ready was given the opportunity to present written statements of witnesses whom he felt would be favorable to him, but Ready did not do so. While personal testimony might be preferable, the use of substitutes such as written statements does not deprive a prisoner of due process. Nothing in the Commission's regulations prohibits the use of witnesses if the Commission is not satisfied with written statements. In any event, Ready is not in a position to complain about the inadequacy of written statements because he did not submit any witness's statements.

█ Ready also seeks the right to cross examine witnesses and to call adverse witnesses. This right is provided in parole revocation hearings unless the hearing officer specifically finds good cause for not allowing confrontation. *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). In contrast, a prisoner facing institution disciplinary proceedings has no right to confront adverse witnesses either by calling them as witnesses or by cross examination. *Baxter v. Palmigiano*, 425 U.S. 308, 321–22, 96 S.Ct. 1551, 1559–60, 47 L.Ed.2d 810 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 567, 94 S.Ct. 2963, 2980, 41 L.Ed.2d 935 (1974). The added procedural protection of cross examination provided in revocation cases is appropriate because the parolee is facing the loss of an important interest—freedom from physical confinement. A prisoner in Ready's position, however, faces the loss of only an expectation of freedom. That expectation is conditioned upon not only continued good behavior, 28 C.F.R. § 2.34(a) (1978); 28 C.F.R. § 2.34(a) (1979), but is also subject to review if new adverse information is received. 28 C.F.R. § 2.34(b)(1) (1978); 28 C.F.R. § 2.28(f) (1979). Since the nature of the loss to the prisoner is less and the grounds

permitting that loss are the same as go into the decision to grant or deny parole, the right of confrontation and cross examination is not required. *Accord Robinson v. Benson*, 570 F.2d 920, 923 (10th Cir. 1978).

The Court recognizes that concerns of institutional safety and promptness which lead the Supreme Court to conclude that cross examination and confrontation of adverse witnesses was not required in prison disciplinary proceedings may be absent in some rescission cases. *See Drayton v. McCall*, 584 F.2d 1208, 1220 (2d Cir. 1978). This does not alter the Court's conclusion that confrontation and cross examination need not be provided. Even if confrontation and cross examination could be provided without severely slowing the rescission process or increasing the danger to witnesses, they are not necessary because the interest of the prisoner facing rescission is not entitled to the same degree of protection as that required for the parolee facing revocation because the threatened deprivation to the prisoner is less severe than the possible loss to the parolee. Further, the Court's view is that the risk of an erroneous decision by the Commission is not substantially increased because of the absence of confrontation and cross examination of adverse witnesses. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 478 (1976). So long as the prisoner has the opportunity to contest the allegations of adverse witnesses, the Commission has sufficient information to exercise properly its discretion whether to rescind parole. The Court, therefore, concludes that the Commission's decision prohibiting Ready from calling witnesses and confronting and cross examining adverse witnesses did not violate Ready's Fifth Amendment right to due process of law.

Because of the Commission's improper application of 28 C.F.R. § 2.34(b) (1978) in deciding to hold a parole rescission hearing, Ready's petition for writ of habeas corpus will be granted to the extent that he shall be released on parole pursuant to the Commission's notice of action dated May 2, 1978 on March 1, 1980 unless the Commission

decides pursuant to 28 C.F.R. §§ 2.28(f) and 2.34 (1979), and without considering the allegation of Ready's involvement in the Leavenworth fraud, that a rescission hearing is appropriate and holds a new rescission hearing before that date.