·Gary Robert WILLIAMS,
Petitioner-Appellant,

v.

UNITED STATES PAROLE COMMIS-
SION, Respondent-Appellee.

No. 82–4062.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 12, 1982.

Reassigned March 8, 1983.

Decided June 8, 1983.

Geoffrey Hansen, Asst. Fed. Public De-
fender, San Francisco, Cal., for petitioner-
appellant.

Kimberly A. Reiley, Asst. U.S. Atty., San
Francisco, Cal., for respondent-appellee.

Before DUNIWAY, SKOPIL, and
FLETCHER, Circuit Judges.

DUNIWAY, Circuit Judge:

Williams appeals from the denial of his
petition for a writ of habeas corpus. He
argues that the Parole Commission erred in
reopening his presumptive parole date be-
cause there was no "new adverse informa-
tion," and, in the alternative, that the Pa-
role Commission acted arbitrarily and capri-
ciously in setting his new presumptive pa-
role date. We affirm.

## I. *The Facts.*

Williams is a federal prisoner confined in a California state prison at San Quentin, to which he was transferred from the federal penitentiary in Atlanta, Georgia, because his life was believed to be in danger in that penitentiary. He is in a special protective custody unit at San Quentin. He is also serving a Texas sentence concurrently, for which a detainer is lodged against him.

In August 1977 Williams was involved in a prison killing at the federal penitentiary in Atlanta. Pursuant to a plea bargain, he testified at the trial of the principals, and pled guilty to one count charging him with being an accessory after the fact. On December 20, 1978, he was sentenced to a term of eight years, consecutive to the other sentence that he was serving.

The sentencing judge executed a standard parole comment form. The judge checked the box on the form indicating that "Parole should be granted at a time best determined by the Parole Board." He did not check the option stating "Unless there is an extraordinary change of character, parole, for the protection of the community, should be denied." On the portion of the form for a judge's comments, the judge stated: "This man cooperated and was a government witness; however, the court is of the opinion his cooperation was to save himself from a prosecution for murder. He was given consideration for this by being prosecuted for accessory rather than the crime of murder. The record is of [sic] such that the court is of the opinion that at the present time he would be a danger to society."

Following its standard practice, the Bureau of Prisons aggregated Williams' sentences to determine his parole eligibility. *See* 28 C.F.R. §§ 2.2, 2.5; 18 U.S.C. §§ 4161, 4205(a). Williams had been eligible for parole since 1973, but parole had not been granted. *See* 18 U.S.C. § 4206(a); 28 C.F.R. § 2.18. His sentences aggregate 39 years.

Williams' first parole hearing was held March 15, 1979. The hearing examiners had before them some sources of information regarding Williams' involvement in the Atlanta prison killing, including Williams' own report and a letter from the prosecutor in the prison killing case. It is not clear from the record whether the pre-sentence report relating to the Atlanta conviction was before the examiners, but it is clear that the judge's parole comment form was not before them. The examiners recommended that Williams' presumptive parole date be set for December 15, 1980, subject to the Texas detainer, and, if that were withdrawn, for January 15, 1981.

The prosecutor's letter stated that there was a plea bargain and that Williams had cooperated. It did not state that Williams pled guilty to avoid a charge of murder, although this might be inferred from the fact that there was a plea bargain.

We do not know what was in the pre-sentence report, because it is not in the record. We do know the conclusions reached by the hearing examiners at the March 15, 1979 hearing. We quote them rather fully because they contrast so sharply with the trial judge's view.

> Noteworthy is that he [Williams] was taken out to court on 12–20–78 and cooperated with prosecution regarding a murder in Atlanta and he received a consecutive eight year sentence for assisting a person who committed murder. He was forced to witness this murder and to hide a homemade hatchet and knife for the man who committed it and also to get rid of the bloody clothing that the man wore. He did this under duress and threat of his life. . . . Subject, not by choice but by pressures placed upon him has become homosexual and has what was quoted as a "daddy" at Atlanta who forced him to hide a homemade hatchet and a homemade knife taht [sic] was [sic] used in a murder. This individual accepted a contract on another man for an unknown price said to be approximately $250.00 and forced subject to hide the weapons that were to be used. Subject states that he did this in fear of his life and that this man, "Leonard" was his daddy and had he not cooperated in hiding these items

he would have been killed. Further he was forced to witness the killing and to hide Leonard's clothes after the killing had been perpetarted. [sic] ... Subject cooperated and said he would testify upon the stand. There is a letter from the U.S. Attorney attesting to subject's cooperation in Atlanta and the fact that the case probably could not have been made had subject not testified.

Williams sent a pro se request for a reduction of sentence to the sentencing judge, in which he mentioned his presumptive parole date. The judge denied Williams' request and directed Atlanta United States Probation Officer Salter to write to the Parole Commission to express the judge's dissatisfaction. Salter wrote the letter on April 26, 1979. With it, he sent a copy of the parole comment and a copy of the pre-sentence report. In the letter, Salter said:

Let me point out to you that Williams pled guilty to a lesser offense to save himself from prosecution for murder.

\* \* \* \* \* \*

I urge you to review the presentence report which I prepared for our Court. Again, this was sent to the Bureau of Prisons but I am attaching a copy for your use. The pattern of violent, anti-social behavior is clear. I do not see how this man can be considered ready to live a law abiding life in society after being involved in such a violent offense. I will point out to you that at the age of 31 Williams has been involved in numerous burglaries, armed robberies, kidnappings, escapes, conveyance of contraband materials in prison, threats on correctional workers and now murder.

After receipt of Salter's letter by the Commission, a case analyst for the Commission summarized the case for Commissioner Kaslow, and stated:

I spoke with Jim Kelly [one of the hearing examiners] on 5–4–79, asking for his recollection of some of the thinking that went into their recommendation in this case. To the best that he could remember, Mr. Kelly indicated that some of the persuasive points in this case were that

Mr. Williams' role appeared to be that of one who disposed of the clothes, rather than took any active [sic] in the murder, and that he was in great fear of his life and felt that he had little recourse but to assist his homosexual lover, the assailant, in his activity.

\* \* \* \* \* \*

*Unfortunately, the only information we have regarding the circumstances of the offense appears to be information which was provided by Williams.* It is noted that Williams came forward and admitted his part in the killing; there is nothing to indicate whether his coming forward was the factor which led to the prosecution in this case. (emphasis added).

The case was reopened on May 23, 1979. The next day, Probation Officer Salter wrote another letter to the Commission, stating more fully his reasons for suggesting a later parole date. Here is part of what the letter says.

The United States government in the past few years has had a great deal of difficulty in convicting anyone of murder in the U.S. Penitentiary in Atlanta. When John Charles Widener was murdered, it appeared there were two people involved. There were two weapons, a knife and a hatchet used in the extremely brutal murder of Widener. Investigation quickly indicated the two persons involved were Gary Robert Williams and Richard Ardon Leonard Butch. Within days of the murder, it became evident both men were facing murder charges, and there was substantial evidence which would prove the two had committed the murder of Widener. As this evidence began to come forward, so did Gary Robert Williams. Williams agreed to testify for the government in this case. The government felt that although Williams was very much involved in the murder, it was Leonard who had taken out the contract to commit the killing, who had planned the killing, who had obtained the weapons for the killing and who had been the major personality leading up to the

killing of Widener. The government felt a great need to convict the parties responsible for committing this murder. Therefore, the government agreed it would charge Williams with accessory after the fact rather than murder due to the above circumstances I have named. During the trial, the defense's allegations were that Leonard had not committed the murder, but rather Williams had. During the trial, at least one witness testified that they [sic] had seen both Leonard and Williams assaulting Widener. Here again, I will point out there were two weapons, both a hatchet and a knife, used in the killing. Most significant however, is that once the trial had been completed and Leonard had been sentenced, he confessed to the United States Marshal that the crime had taken place just as the government had contended, except that Williams had also gotten in a few blows. He claimed Williams had used a hatchet, but was not doing a good job so he (Leonard) had taken the hatchet away to complete the job. Evidence presented at the trial, as well as Williams' own admissions, shows that Williams did everything in his power to conceal the fact that he and Leonard had been involved in the killing.

\* \* \* \* \* \*

One other factor I feel is relevant to the offense itself is that evidence shows, and Williams admits, he had prior knowledge the killing was to take place. It was not a situation he suddenly found himself present in, with his much more powerful homosexual partner committing a killing which he was bound to engage in. It was a situation in which Williams had prior knowledge the killing was going to take place. He helped smuggle the weapons out of the dormitory so they could be used for the killing which was soon to take place.

Williams' special reconsideration hearing was held July 2, 1979. The hearing examiners considered several sources of information regarding the prison killing received after the reopening, as well as the parole comment form and the probation officer's letter. These examiners recommended the same presumptive parole date as had been set after the first hearing. The hearing officers also concluded that there was insufficient new information on which to change their recommendation.

Pursuant to 28 C.F.R. § 2.24(a), a Regional Commissioner reviewed the hearing examiners' conclusion and disagreed with the local decision. The case was referred to the National Commissioners with a recommended parole date of January 15, 1989. The National Commissioners finally adopted a presumptive parole date of April 14, 1986.

After exhausting his administrative remedies, Williams filed his federal habeas corpus petition. The district court dismissed the petition, finding that the sentencing judge's opinion as to the early parole date was new adverse information. The court also found that the reopening was valid on the basis of information received after the reopening.

## II. *Discussion.*

### A. *Standard of Review.*

■ The decisions of the Parole Commission are committed to its sound discretion. 18 U.S.C. §§ 4218(d), 4203(b). A court should not override the judgment of the Commission unless it has abused its discretion. *O'Brien v. Putnam,* 9 Cir., 1979, 591 F.2d 53, 55.

■ The Commission has broad powers to implement the statutory provisions for parole. 18 U.S.C. § 4203(a)(1). Comprehensive regulations govern the procedures to be followed. 28 C.F.R. §§ 2.1–2.60 (1981). The Commission's interpretation of its own regulations is entitled to deference, unless the interpretation is shown to be plainly erroneous or inconsistent with the regulation. *Udall v. Tallman,* 1965, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616. The administrative construction given a regulation must be reasonable and consistent with the governing statutes and other relevant regulations. *See McClanahan v. Mulcrome,* 10 Cir., 1980, 636 F.2d 1190, 1191.

■ An appellate court's examination of the district court's review of Parole Commission action includes a determination of whether the district court correctly applied proper legal principles in examining the record and whether the record contained adequate supporting material. *Zannino v. Arnold,* 3 Cir., 1976, 531 F.2d 687, 691.

■ We deal here with a reopening after the setting of a presumptive parole date. As "presumptive" shows, the date is not final, but subject to change. Thus, cases such as *Ready v. United States Parole Commission,* M.D.Pa., 1980, 483 F.Supp. 1273, which deals with a final parole date, rather than a presumptive parole date, are not in point here. The difference between rescission of an effective parole date and reopening to reconsider a presumptive parole date is sufficient to warrant a less stringent rule for reopening than for rescission. Accordingly, we do not adopt the strict "preclusion" rule of *Ready* here.

### B. *New Adverse Information.*

A presumptive parole date is conditional, and is subject to reopening under 28 C.F.R. § 2.28. 28 C.F.R. § 2.12(d) (1982). Section 2.28(f) provides, in pertinent part:

> *New adverse information.* Upon receipt of new and significant adverse information that is not covered by paragraphs (a)–(e) of this section, the Regional Commissioner may refer the case to the National Commissioners with his recommendation and vote to schedule the case for a special reconsideration hearing.... The decision to schedule a case for a special reconsideration hearing shall be based on the concurrence of three out of five votes....

"New and significant adverse information" is not defined in the regulations. *See* 28 C.F.R. § 2.1(i).

### 1. *Sentencing judge's expectations for parole.*

In *Izsak v. Sigler,* 9 Cir., 1979, 604 F.2d 1205, the appellant argued that the sentencing judge had intended an early parole date, and that denial of parole frustrated

the intention of the sentencing judge. We denied that claim, relying on *United States v. Addonizio,* 1979, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805, 604 F.2d at 1207–1208. In *Addonizio,* the Supreme Court stated:

> The import of this statutory scheme is clear: the [sentencing] judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met. To require the Parole Commission to act in accordance with judicial expectations, and to use collateral attack as a mechanism for ensuring that these expectations are carried out, would substantially undermine the congressional decision to entrust release determinations to the Commission and not the courts. 442 U.S. at 190, 99 S.Ct. at 2243.

■ In light of these decisions, it would be improper to hold that the sentencing judge's dissatisfaction with a presumptive parole date can be "new and significant adverse information." As noted by the Court in *Addonizio,* the enforceable expectations of a sentencing judge for a particular release date are severely limited by statute. *Id.* at 189 & n. 15, 99 S.Ct. at 2242 & n. 15. The statute provides that the recommendation of the sentencing judge *"made at the time of sentencing"* (emphasis added) shall be considered by the Commission if available and relevant. 18 U.S.C. § 4207. *See also* 28 C.F.R. § 2.19(a). The statute and regulations indicate that other substantial information may be considered by the Commission but place restrictions on such information to assure accuracy and relevance to the statutory criteria for parole. *See* 28 C.F.R. § 2.19(b), (c), (d).

### 2. *Parole comment form.*

■ The district court found that the sentencing judge's parole comment form was new adverse information because it was not available or not considered by the hearing examiners at the initial parole hearing. We agree.

It is critical to our view of this case that the information that the hearing examiners failed initially to consider was the sentencing judge's parole comment form. As we have seen, both the statute, 18 U.S.C. § 4207(4), and the regulation, 28 C.F.R. § 2.19(a)(4), *require* the Commission to consider the sentencing judge's comments regarding parole. When, as here, the Commission's hearing examiners are unaware of the contents or existence of this form when making their initial presumptive parole date determination, we think it entirely proper for the Regional Commissioner to reopen so that the sentencing comments can receive proper consideration. In our view the sentencing judge's opinion at the time of sentencing is itself a significant "fact" that the Commission's hearing examiners ought to consider. The importance of the judge's recommendation is indicated by the fact that the statute and regulations both expressly require it to be considered.

Thus, it is not an answer to say that the examiners had before them substantially the same information as the parole comment form contained. It is not at all clear that they did, but assuming that they did, they did not do what the statute and regulations require—consider the "recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge." 18 U.S.C. § 4207(4).

Neither is it an answer to say that, because the parole comment form and presentence report were sent to the Bureau of Prisons, which is what the record shows, we must hold that there is no excuse for the Commission's failure to consider them, and therefore the Commission cannot consider the parole comment form when it is brought to the Commission's attention.

We refuse to adopt an ironclad rule that the Commission can never reopen a case under Section 2.28(f) on the basis of a document that is in its file, but which has not in fact been considered by the examiners in making their parole decision. On the other hand, we go only so far here as to say that an item as important as the sentencing judge's recommendation, one that is statu-torily required to be considered, may in a proper case serve as a basis for reopening. Here, the sentencing judge's recommendation was not before the examiners at the time of hearing and could have substantially affected the parole decision.

The Parole Commission has nationwide jurisdiction. It blinks reality to hold that papers such as the trial judge's parole comment and pre-sentence report, sent to the Bureau of Prisons by a judge and a probation officer in Atlanta, must have been in, or must be deemed to have been in, the file of the Regional Commission in Burlingame, California, and therefore before the examiners who conducted the first hearing at San Quentin prison in California. Williams, a federal prisoner, was in that prison only to protect him from being killed by fellow inmates if he were to remain in the federal prison in Atlanta. It could easily happen that papers concerning him, sent to the Bureau, never got to the California office of the Commission until Probation Officer Salter sent them with his April 26, 1979 letter.

The Commission is not a court, and is not required to act like a court. We should not hog tie it by overtechnical construction of the statutes and the regulations. The Commission's construction and application of them should be upheld unless they are obviously wrong.

It seems clear from the record that, at the first hearing, the Commission examiners swallowed Williams' version of the murder because they did not have any other information before them. When the Regional Commissioner received the sentencing judge's parole comment, she recommended reopening and the Commission voted to reopen. We hold that she had power to recommend, and that the Commission had power to reopen. *McClanahan v. Mulcrome,* 10 Cir., 1980, 636 F.2d 1190, is in point. There the court noted that the regulation, then 28 C.F.R. § 2.28, now § 2.28(f), refers to the receipt of new and significant information by the Regional Commissioner. It held:

We are not persuaded that the agency's conclusion, that the information received was "new information," is arbitrary or capricious. In construing an administrative regulation, we must look to the administrative construction given to the meaning of the language used in the regulation. Such interpretation is controlling unless plainly erroneous or inconsistent with the regulation. *Dawson v. Andrus*, 612 F.2d 1280, 1283 (10th Cir.1980). The record does not demonstrate that the Commission acted in a clearly erroneous manner when it interpreted its own regulation to conclude that the disparity in parole treatment was "new information". 636 F.2d at 1191.

As Judge Henderson, the habeas corpus judge, said in his order denying the writ:

Petitioner's case was properly reopened under 28 C.F.R. § 2.28(f). Judge O'Kelley's parole comment form indicated his belief that petitioner's cooperation with the government in the prosecution of his codefendants was motivated purely by self-preservation. Judge O'Kelley's opinion in this matter case [sic] doubt on the Commission's assumption that petitioner's cooperation indicated an attitude bearing favorably on parole, and thus called into question the correctness of the Commission's prior parole determination.

3. *Information received after reopening.*

The district court held that other documents, received by the Commission after the decision to reopen, independently support the reopening of Williams' parole date. We do not consider whether this was a proper holding because we have held that the sentencing judge's parole comment form was "new and significant adverse information" justifying reopening under 28 C.F.R. § 2.28(f). Once the presumptive parole date was reopened, the Commission was authorized by 28 C.F.R. § 2.19 to consider all of the additional documents. At the reopening hearing, the Commission was entitled to take remedial action based in part upon the new information. It certainly did not abuse its discretion, nor did it misconstrue its own regulation.

We find no merit in Williams' attack on the April 14, 1986 date finally fixed by the Commission. The Commission did not act arbitrarily or capriciously in setting the new parole date. *See Reynolds v. McCall*, 9 Cir., 1983, 701 F.2d 810, 813–814.

Affirmed.

SKOPIL, Circuit Judge, concurring.

The Parole Commission's interpretation of "new information" adopted by the majority here has been approved in other circuits. *See Fardella v. Garrison*, 698 F.2d 208, 211 (4th Cir.1982); *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir.1981); *McClanahan v. Mulcrome*, 636 F.2d 1190, 1191 (10th Cir.1980). I am constrained to concur in the result here but I remain troubled by the inherent arbitrariness in parole decisions permitted under the rule. I find the record kept by the Parole Commission in this case inadequate to account for its statutory duties and to permit effective judicial review.

I agree with the majority that a sentencing judge's parole comment form or a presentence report may be considered "new and significant adverse information," within the meaning of 28 C.F.R. § 2.28(f) (1982), if it was not *available* to the hearing examiners when they made their decision. 18 U.S.C. § 4207 (1976) requires the Commission to consider, *inter alia,* the parole comment form *if available and relevant.*[1] *See also* 28 C.F.R. § 2.19 (1982). I would also agree that a case could be reopened if the Commission discovers information listed in the statute which it should have considered but inadvertently did not consider. Yet it

---

1. The legislative history makes clear that availability and relevance should act as limitations on the Commission's responsibility to consider these materials. "In terms of availability, for example, if a judge has not commented on the sentence or parole of the offender, the Commission is under no duty to solicit such commentary." H.R.Rep. No. 838, 94th Cong., 2d Sess. 28 (1976), reprinted in 1976 U.S.Code Cong. & Admin.News 335, 360. Relevance and weight to be given any information is solely within the discretion of the Commission. *Id.*

is clear that information that was before the hearing examiners and considered by them is not new information and should not be the basis for reopening the case.

These principles require some means by which to determine on the record what information was or was not available and considered by the hearing examiners. In this case the district court could not objectively determine from the record, as we cannot, what was available and considered by the hearing examiners. The Commission simply took the position that the parole comment form was not available. The Commission argued that parole files are voluminous and it would be impossible to determine what information was considered or available and what was not. Accepting this argument means the Commission is practically unaccountable for its methods in carrying out the statutory requirements for its decision-making process.

I find this practice an unacceptable implementation of the provisions for reopening parole decisions. It is also unacceptable in view of our appellate obligation to review the record and determine whether the Commission's actions are consistent with the statutes and not arbitrary. The majority is more willing than I to accept the assertion of the Regional Commissioner and to infer from hearing reports that the parole comment form and pre-sentence report were not available or not considered. At a minimum, I would require the hearing examiners to specify in the hearing report at least the documents and information contained in its file that it is statutorily required to consider. Otherwise, the rule is meaningless and review is ineffective.

This case demonstrates the inherent arbitrariness in parole decisions that may result when the Commission cannot show which information was before the hearing examiners. The "newly discovered" or "previously unavailable" information materialized when the sentencing judge and probation officer expressed their intense dissatisfaction with the parole decision. This practice does not effectively serve the congressional purpose to appropriately insulate parole de-

cisions and to provide fair and equitable parole procedures. See S.Rep. No. 369, 94th Cong., 2d Sess. 1, 19 (1976), reprinted in 1976 U.S.Code Cong. & Admin.News 335, 341.

I would affirm on the basis of the documents received by the Commission after the initial decision to reopen since Williams eventually waived the defects in disclosure. See 28 C.F.R. § 2.55(f) (1982); Ready v. United States Parole Commission, 483 F.Supp. 1273, 1277 (M.D.Pa.1980).