William Grant GOBLE,
Petitioner-Appellant,

v.

Robert MATTHEWS; Warden, FCI, Lexington, Ky.; and U.S. Parole Commission, Respondents-Appellees.

No. 86–5166.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1986.
Decided March 30, 1987.

Douglas L. McSwain (Court-appointed), Owensboro, Ky., for petitioner-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Monica Wheatley, Robert E. Rawlins (argued), for respondents-appellees.

Before ENGEL, KRUPANSKY and NELSON, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is an appeal from the denial of a writ of habeas corpus sought by a federal parole violator after his return to prison. A regional office of the U.S. Parole Commission ordered that petitioner serve 40 months before reparole. In so ruling, the regional office modified the recommendation of a hearing panel that had proposed a presumptive parole date 34 months hence. In subsequent administrative proceedings the order of the regional office was affirmed on the basis of information that was probably contained in the file before the hearing panel but was not considered by the panel.

After the filing of the habeas petition, the Parole Commission reopened the case and scheduled a hearing to consider the information not addressed by the hearing panel. The "new information" was disclosed to petitioner, he was afforded an opportunity to comment on it, and a new hearing panel (one of the two members of which had also served on the original panel) recommended adhering to the decision that petitioner be required to serve 40 months before reparole. That recommendation was adopted.

The magistrate to whom the habeas case was referred recommended that summary judgment be entered in favor of the Parole Commission. The magistrate thought that the central issue was whether the information that had not been addressed by the first panel constituted "new" information warranting a "special reconsideration" hearing under the Parole Commission's regulations. The magistrate concluded that the information in question was "new," within the meaning of that term as used in the regulations, because it had not been considered by the hearing panel originally. The district court agreed, and so do we. On the facts of this case, however, we believe that the denial of the writ of habeas corpus would have to be affirmed whether or not the information was "new."

## I

Petitioner was paroled in 1979, after having served less than four years of a ten year sentence for interstate transportation of stolen and counterfeit securities.

In 1983 a parole violator warrant was issued on an application charging petitioner with having violated his parole in the following three aspects:

—On May 31, 1983, petitioner pleaded guilty to a federal charge of possession of a firearm by a convicted felon;

—On June 3, 1983, petitioner pleaded guilty in a state court to a three-count charge of receipt of stolen property; and

—On June 3, 1983, petitioner pleaded guilty in a state court to a charge of unauthorized acquisition of food stamps.

After petitioner had been returned to federal custody, a parole revocation hearing was conducted to determine whether petitioner had violated the conditions of his release and whether revocation of parole and establishment of a new presumptive release date should be recommended.

At the hearing the panel read the three "charges" to petitioner aloud and discussed each of them with him in detail. In the course of that discussion petitioner confirmed that the property referred to in the second charge consisted of three automobiles. When asked if their combined value was "about $22,500," petitioner said "I don't know." Petitioner was then told that a probation office report identified the vehicles as two pickup trucks with an estimated value of $6,500 each and a Chevrolet Camaro with an estimated value of $10,000. Petitioner was told that "totaling the whole mess up," including $394 worth of food stamps covered by the third charge, "the whole thing comes out about over $22,905 total...."

The dollar amount is important, because 28 C.F.R. § 2.20, setting forth policy guidelines on the determination of parole release dates, establishes a $20,000 breakpoint for rating the "severity" of theft and related offenses. If the property is valued at a figure between $2,000 and $20,000, the offense is placed in Category 3 of the guidelines. If the value of the property is between $20,000 and $100,000, the offense falls in Category 4. For a prisoner with the "offender characteristics" of this petitioner—"poor"—the guideline range for a Category 4 offense is 34 to 44 months. For a Category 3 offense, the guideline range is 24 to 32 months.

After receiving a lengthy explanation of how his "offender characteristics" had been evaluated, petitioner asked "Oh, and another thing, how did I get in [offense] category 4?" A panel member replied as follows:

> "It'd be more than $20,000 over all property offense or forgery or counterfeit or food stamps, automobile value, we simply added up the whole thing and it comes out to $22,905 and $20,000 or more will put you in the category 4 and that's how it happened."

Petitioner responded that "there's no way a '79 Ford pick-up could be worth $6500...." The panel member explained that figure had come from the state police, but petitioner was told that if he could get official information "documenting that this total offense behavior is less that [sic] 20,-000.00 we would be glad to put it in category 3...."

At no time in the hearing was there any discussion of any parole violation other than the gun possession matter, the receipt of the three stolen vehicles, and the unauthorized acquisition of food stamps. The hearing panel made detailed findings as to each of these three charges, but neither at the hearing nor in the panel's written summary and recommendation was there any reference to any other offense. The panel's arithmetic may have been a little shaky, but it is apparent that in arriving at a total dollar figure for the theft related offenses, the panel did not go outside the three charges set forth in the application for a warrant.

Unbeknownst to the panel, as it seems, petitioner had experienced other difficulties while on parole. For one thing, a Kentucky grand jury indicted him for theft by deception through issuance of an insufficient funds check in the amount of $220.41. The matter was settled when petitioner pleaded guilty to an amended misdemeanor charge and promised to make prompt restitution. Secondly, a Kentucky attorney filed a criminal complaint and affidavit accusing petitioner of theft by deception. The affidavit says that petitioner agreed to purchase a wrecked BMW car for the attorney and was given a $2600 check for that purpose; petitioner allegedly cashed the check, but failed either to purchase the vehicle or return the money. It appears probable that references to these incidents were contained in the file before the hearing panel, and we assume, for purposes of this opinion, that petitioner is correct in his assertion that such was the case.

28 C.F.R. § 2.24(b)(2) provides that a Regional Commissioner may, on his own motion, modify a hearing panel recommendation by extending the recommended release date up to six months. The Regional Commissioner did that in ordering that petitioner serve 40 months rather than the 34 months recommended by the hearing panel. Petitioner sought relief from the 40 month order not on the ground that the Regional Commissioner was required to accept the panel recommendation, but on the ground that the total value of the three stolen vehicles involved in the second charge was only $18,000. In affirming the 40 month order on reconsideration, the Regional Commissioner seemed to accept petitioner's representation as to the value of the vehicles; for the first time, however, the theft charges involving the NSF check and the $2600 check for the BMW were taken into account. The statement of reasons for the 40 month order was modified as follows:

> "Your offense behavior has been rated as Category Four severity because it involved 3 stolen motor vehicles valued at

least $18,000, and a $221 check for insufficient funds, and a $2600 check for which restitution was made; possession of a firearm as a convicted felon and unauthorized acquisition of Food Stamps."

The National Appeal Board likewise affirmed the 40 month order on the ground that when the two checks were taken into account, "[t]he total amount involved in your theft related offenses exceeded $20,-000."

In seeking habeas corpus relief petitioner contended that the Parole Commission ought to have given him notice that the theft by deception charges would be taken into account, in addition to the matters in the parole revocation warrant application.

In apparent response to this contention, the regional office of the Parole Commission notified petitioner on July 29, 1985, that his case had been reopened and that pursuant to 28 C.F.R. § 2.55 a special reconsideration hearing would be held "[t]o consider information concerning the issuance of insufficient funds checks ... and disclosure of supporting documents." 28 C.F.R. § 2.55 provides that prisoners shall be notified, prior to parole hearings, of their right to request disclosure of the reports and other documents to be used in making the determination on parole. 28 C.F.R. § 2.55(f), captioned *"Late received documents,"* says:

"If a document containing new and significant adverse information is received after a parole hearing but before all review and appellate procedures have been concluded, the prisoner shall be given a rehearing on the next docket. A copy of the document shall be forwarded to the institution for inclusion in the prisoner's institutional file. The Commission shall notify the prisoner of the new hearing and his right to request disclosure of the document pursuant to this section. If a late received document provides favorable information, merely restates already available information or provides insignificant information, the case will not be reopened for disclosure."

On August 8, 1985, the National Commissioners issued a second notice of the reopening of petitioner's case. The second notice said that a special reconsideration hearing would be held pursuant to 28 C.F.R. § 2.28(f) "to consider new adverse information based on U.S. Probation Officer Donald E. Fields' letter of July 25, 1984, regarding a plea of guilty to Indictment No. 82–CR–243 issuing a $221 check with insufficient funds; also being considered is a $2600 check on which restitution was made." 28 C.F.R. § 2.28(f), captioned *"New adverse information,"* says that "[u]pon receipt of new and significant adverse information ... a Commissioner may refer the case to the National Commissioners with his recommendation and vote to schedule the case for a special reconsideration hearing."

The July 25 letter from Probation Officer Fields says, in pertinent part, that "on October 25, 1982, [petitioner] pled guilty under indictment no. 82–CR–243 to violating one count of KRS 541.040 [514.040] issuing a check with insufficient funds. This check was in the amount of $221. This indictment originally contains two counts with the other check being in the amount of $2600, however, that count was dismissed after restitution was made."

A reconsideration hearing was held on August 19, 1985, and a summary of that hearing states, among other things:

"The panel disclosed the new information to [petitioner] and he did not believe it was either new or adverse. * * * He feels like he should have an offense severity rating of Category Three because the total theft related offenses is less than $20,000. He does not believe he should be held accountable for the insufficient funds check of $221 and the $2600 check because it was not on his original warrant application and he believes he can provide proof ... that the charge was dismissed for lack of evidence.

\* \* \* \* \* \*

"After going over that information today, the panel concluded that a preponderance of evidence is present that he was involved in those checks. ($2600 and

$221) [Petitioner] is correct, however, in that it was not listed on the warrant application it should be viewed as charge number 4 on the warrant application. A Notice of Action should be amended to prove charge no. 4—theft by deception ($2600) and insufficient fund check ($221)."

The panel recommended that petitioner serve 40 months, as previously ordered. A "Notice of Action" dated September 16, 1985, set forth the panel's finding that petitioner had violated his parole through "theft by deception and insufficient fund check" ("CHARGE NO. 4"), and petitioner was given a presumptive parole date of November 14, 1986, based on service of 40 months.

## II

On this record, we believe the magistrate and the district court were clearly correct in declining to release petitioner before the expiration of 40 months. If "new and significant adverse information" was received, the regulations permitted the Parole Commission not only to consider it, but to establish a release date *subsequent* to the date established originally. There is case law in other circuits to the effect that a prisoner's presumptive release date may be extended on the basis of "new" information even though such information was in existence prior to the initial parole determination (*Fardella v. Garrison*, 698 F.2d 208, 211 (4th Cir.1982)), and even though the information was actually used against the prisoner at the trial in which he was convicted (*Torres-Macias v. U.S. Parole Commission*, 730 F.2d 1214 (9th Cir.1984)). See also *Williams v. U.S. Parole Commission*, 707 F.2d 1060, 1065 (9th Cir.1983), where, in approving the extension of a prisoner's presumptive parole date after a special reconsideration hearing, the court "refuse[d] to adopt an ironclad rule that the Commission can never reopen a case under Section 2.28(f) on the basis of a document that is in its file, but which has not in fact been considered by the examiners in making their parole decision." One judge filed a critical concurrence, but his separate opinion says that he "would also agree that a case could be reopened if the Commission discovers information listed in the statute which it should have considered but inadvertently did not consider." *Id.* at 1066.

The action taken by the Parole Commission in the case at bar was far less drastic, from petitioner's standpoint, than that taken in the cases cited above. There the prisoner's parole date was extended; here it was simply left standing. Although an earlier parole date had been recommended for petitioner, the only date ever actually adopted was calculated on the basis of his serving 40 months in prison. It does not seem to us that the Parole Commission had to be in receipt of "new" information to decline to shorten the period adopted initially. When, on reconsideration, the Regional Commissioner determined that he had reached the correct result for the wrong reason, he did not need "new" information to reaffirm; he simply needed to satisfy himself that the result was, in fact, a correct one.

■ Although it is not directly applicable, 28 C.F.R. § 2.24(b)(3), which empowers the Regional Commissioner to return a case to the institution for a rehearing, has some significance. When the amendment adopting that section of the regulations was proposed, the Commission observed that procedural difficulties had arisen in situations where "the examiner panel has not adequately explored a material issue of fact at a hearing for the Regional Commissioner to make a conscientious finding." 45 Fed.Reg. 84053 (Dec. 22, 1980). The adoption of § 2.24(b)(3) clearly indicates that a hearing panel's failure to address a particular matter ought not forever bar the Commissioner from raising the matter and giving the prisoner an opportunity to respond.

■ If regulations do not specifically provide that the Commission or its designee may reaffirm a presumptive release date on the basis of information contained in the file but inadvertently overlooked, we believe that the Commission has implied authority to do so as part of its statutory power to grant or deny parole applications.

18 U.S.C. § 4203(b)(1). The Commission's power to implement the statutory provisions for parole is "broad" (*Williams*, 707 F.2d at 1063), and the action taken in this case comes within that broad power, in our view, whether or not there is a gap in the regulations. The action is in harmony with the spirit of §§ 2.24(b)(3), 2.28(f) and 2.55(f), whether or not it comes squarely within the letter of those provisions, and nothing in the regulations prohibits the action.

Petitioner was reparoled shortly before the oral argument in this case, and the Commission moved for entry of an order dismissing the appeal as moot. We were reluctant to grant the motion, because of the possibility that a decision in petitioner's favor could have reduced the period for which he must remain under parole supervision. *Cf. Mabry v. Johnson*, 467 U.S. 504, 507 n. 3, 104 S.Ct. 2543, 2546 n. 3, 81 L.Ed.2d 437 (1984). Because we now decide the merits of the appeal, it is unnecessary to rule on the merits of the motion.

The judgment denying the petition for a writ of habeas corpus is AFFIRMED.