620 A.2d 917

**PATUXENT INSTITUTION BOARD OF REVIEW**

v.

**Clarence J. HANCOCK.**

**No. 5 Sept. Term, 1992.**

Court of Appeals of Maryland.

March 12, 1993.

Reconsideration Denied April 1, 1993.

558

560

Carmen M. Shepard, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Andrew H. Baida, Asst. Atty. Gen., George A. Eichhorn, III, Asst. Atty. Gen., all on brief), Baltimore, for petitioner.

Joseph B. Tetrault, Staff Atty. (Emily Miller Rody, Chief Atty., Legal Aid Bureau, Inc., Baltimore, Witold J. Walczak, Pittsburgh, PA, all on brief), for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

We granted certiorari to review the judgment of the Court of Special Appeals, which ordered Clarence Hancock, the respondent, immediately released from prison.

In 1976, the respondent was convicted of murder, attempted murder, and assault and battery. He was sentenced to life imprisonment, plus thirty-five years. In April 1977, the respondent was accepted at Patuxent Institution,[1] as a "defective delinquent." [2] When the defective delinquent statute was repealed, effective July 1, 1977, *see* Acts 1977, Ch. 678, the respondent was retained at Patuxent as an "eligible person," *i.e.,*

> a person who (1) has been convicted of a crime and is serving a sentence of imprisonment with at least three years remaining on it, (2) has an intellectual deficiency or emotional unbalance, (3) is likely to respond favorably to the programs and services provided at Patuxent Institution, and (4) can be better rehabilitated through those programs and services than by other incarceration.

Md.Code (1957, 1976 Repl.Vol., 1980 Cum.Suppl.), Art. 31B § 1(g). In 1984, the respondent was approved for accompanied day leave. *See* Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 700D. In July 1985, pursuant to Md.Code (1957, 1983 Repl.Vol.) Art. 31B, § 10,[3] Hancock was placed in Patux-

---

**1.** Patuxent Institution was established by the Maryland General Assembly in 1951 to operate, separately and independently from the prisons under the jurisdiction of the Maryland Division of Correction. *See* Ch. 476, Laws 1951; Md.Code (1951) Art. 31B, § 1, *et seq.* Its purpose was "to provide efficient and adequate programs and services for treatment with the goal of rehabilitation of eligible person." Md.Code (1957, 1990 Repl.Vol.), Art. 31B § 2(b).

**2.** A "defective delinquent" was:
an individual who, by the demonstration of persistent aggravated antisocial or criminal behavior, evidences a propensity toward criminal activity, and who is found to have either such intellectual deficiency or emotional unbalance, or both, as to clearly demonstrate an actual danger to society so as to require such confinement and treatment, when appropriate, as may make it reasonably safe for society to terminate the confinement and treatment.
Md.Code (1957, 1976 Repl.Vol.), Art. 31B § 5.

**3.** Section 10(a) provides:
(a) *Eligibility for work release and leave of absence.*—Persons transferred to the Institution for treatment are eligible for the work release and leave of absence programs provided for in §§ 700A through 700D–1 of Article 27 of the Code. The functions of the

ent's work-release program and in September, his work release status was changed to school-release.[4] Pursuant to Art. 27, § 700D, Hancock was approved for unaccompanied leave in 1986.

In 1987, the respondent was recommended for parole. The statute then in effect required gubernatorial approval in the case of an inmate serving a life sentence. Md.Code (1957, 1983 Repl.Vol.) Art. 31B § 11(b)(2).[5] That statute had been enacted in 1982. *See* ch. 588, Laws 1982. The Governor rejected the recommendation. Subsequently, on December 1, 1988, the work release program was suspended. *See Holmes v. Robinson,* 84 Md.App. 144, 578 A.2d

---

warden or superintendent and the Commissioner under those sections shall be performed by the board of review with respect to persons confined in the Institution.

4. Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 700A(a) provides:

(a) *Establishment.*—The Department of Correction is authorized to establish a "work release" program under which prisoners sentenced to the jurisdiction of the Department may be granted the privilege of leaving actual confinement during necessary and reasonable hours for the purpose of working at gainful private or public employment or attending school as part of a work release program. Such program may also include, under appropriate conditions, releases for the purpose of seeking such employment.

5. Article 31B § 11(b)(2) provided:

(b) *Action by board of review prior to expiration of sentence.*—At any time after transfer of a person to the Institution for treatment as an eligible person but prior to the expiration of the person's sentence, the board of review, upon review of the person may take the following action:

\* \* \* \* \* \*

(2) If the board of review concludes that (i) it will not impose an unreasonable risk on society; and (ii) it will assist in the treatment and rehabilitation of the eligible person, it shall grant a parole from the Institution for a period not exceeding one year. An eligible person who is serving a term of life imprisonment shall only be paroled with the approval of the Governor. The board of review may attach reasonable conditions to the parole, at any time make reasonable and appropriate modifications of these conditions, and revoke the parole if it finds that the person has violated a condition of the parole. The board of review shall review the person's status prior to the expiration of the parole period, and may extend the parole.

294, *cert. denied,* 321 Md. 501, 583 A.2d 275 (1991). Thereafter, in March 1989, citing "his deteriorating behavior," the Board revoked the respondent's participation in the work release program. The respondent was removed from Patuxent Institution on April 5, 1990, after the Board concluded that his behavior had become "unbefitting [of] continued participation in the program and services" of Patuxent Institution. The bases for this conclusion mirror the allegations which later would be made in support of the petition for parole violation filed by the Board.

We filed our opinion in *Gluckstern v. Sutton,* 319 Md. 634, 574 A.2d 898, *cert. denied sub nom. Henneberry v. Sutton,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990), on June 7, 1990. In that case, we held that gubernatorial approval could not be required in the case of Patuxent inmates whose life sentences were for offenses committed before July 1, 1982, the effective date of the statute; the statute could not be applied retroactively. *Id.,* 319 Md. at 669, 574 A.2d at 915.[6] Relying on that decision, the respondent filed an habeas corpus action in the Circuit Court for Baltimore City, in which he challenged the Governor's decision to withhold parole approval.

The circuit court agreed that *Gluckstern* applied and, on July 24, 1990, passed the following order:

---

**6.** In *Gluckstern v. Sutton,* 319 Md. 634, 574 A.2d 898, *cert. denied sub nom. Henneberry v. Sutton,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990), the trial court ordered "the Institutional Board of Review to afford [the defendant] another parole hearing [based] 'solely on the facts and evidence as they existed when [it] originally considered [the defendant] for parole'" ... *Id.* 319 Md. at 646, 574 A.2d at 904. Should parole be granted, it permitted Patuxent to "seek revocation of such parole ... on the basis of any actions or conduct ... of [the defendant] occurring after" the date he was recommended for parole. The court made clear that release from custody was being ordered only if application for revocation of parole was not filed immediately after the parole hearing. *Id.* at 647, 574 A.2d at 904. Significantly, we did not pass upon "the propriety of the relief granted or ... [as to] any specific provisions of the order," since "neither side in this Court complains about the nature of the circuit court's order or about any of its specific provisions...." *Id.* at 648, 574 A.2d at 904.

... [The petitioner] be, and hereby is, directed to parole [the respondent] on or before August 10, 1990, unless [the petitioner] within that time period commences appropriate and legally mandated procedures to revoke [the respondent's] parole, with a copy of the Request For Issuance of Retake Warrant form setting forth particularized grounds for the alleged violation to be served on [the respondent], his counsel and this Court on or before August 10, 1990.

Citing *Morrissey v. Brewer*, 408 U.S. 471, 483–84, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484, 495 (1972), the court explained:

The Court is mindful of the fact that [the respondent] may have engaged in conduct since the initial parole decision by the Board of Review that would militate against his release on parole at this time. Consequently, the Patuxent Board of Review is entitled to review [the respondent's] conduct since the parole recommendation to determine whether he "has in fact breached the conditions of parole."

It concluded:

Since [the respondent] has not been on parole physically, the Court recognizes he may not have satisfied many of the ordinary terms and conditions of a parole order, e.g. maintaining a job, reporting to a parole officer at specified times. However, these failings are not of his own volition. Therefore, in deciding whether revocation is warranted, the Board of Review should focus on behavior over which [the respondent] has exercised control.

Neither party appealed the judgment.

 Consistent with the circuit court's order, the petitioner paroled the respondent.[7] It issued him an Order of

---

7. The panoply of rights usually associated with a criminal case do not extend to violation of parole or probation proceedings. *Baldwin v. State*, 324 Md. 676, 682–83, 598 A.2d 475, 478 (1991); *Bergstein v. State*, 322 Md. 506, 520, 588 A.2d 779, 785–86 (1991); *Smith v. State*, 306 Md. 1, 7, 506 A.2d 1165, 1168 (1986); *Dean v. State*, 291 Md. 198, 202, 434 A.2d 552, 555 (1981). The due process clause of the Federal and State constitutions establishes procedural guarantees that must be

Parole which expired August 2, 1991 and contained special, as well as general terms and conditions of parole.[8] One of the conditions was General Condition # 3: "The parolee shall not commit any act which would be a violation of any Federal, State Law or Municipal ordinance; and shall conform to all rules of conduct imposed upon him by the Patuxent Institution or authorized representative." Simultaneously, the petitioner served the respondent with a Preliminary Hearing Notice[9] notifying him of the purpose of the hearing—to determine whether probable cause exists to believe he violated parole and the consequences of that finding,—and a Request for Parole Revocation Warrant,

---

afforded a parolee before he/she can be deprived of a liberty interest. *See Morrissey v. Brewer,* 408 U.S. 471, 484, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484, 496 (1972) ((1) written notice of claimed violations; (2) disclosure of the evidence against the parolee; (3) opportunity to be heard; (4) right to confront and cross-examine witnesses; (5) a neutral and detached hearing body and (6) written statement of evidence relied upon in revoking parole). *See also Black v. Romano,* 471 U.S. 606, 612, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636, 642 (1985); *Baldwin v. State,* 324 Md. at 683, 598 A.2d at 478; *Adkins v. State,* 324 Md. 641, 655 n. 8, 598 A.2d 194, 201–02 n. 8 (1991).

8. The Order of Parole required the respondent's acceptance. By accepting, which the respondent did when it was issued to him, he acknowledged understanding and agreed to abide by the terms and conditions of parole and to waive extradition should he violate parole. It also contained four special conditions:
 1) The respondent must reside in an halfway house;
 2) The respondent must abstain from use of alcohol or drugs and submit to tests for such substances;
 3) The respondent must stay away from Ms. Theresa Knight and son; and
 4) The respondent must attend weekly supervision as directed.
Eighteen general conditions of parole were also prescribed.

9. Maryland Rule 4–222(b) provides that "an adult ... shall be released on personal recognizance under terms and conditions that do not significantly restrain the defendant's liberty unless the judicial officer determines that there is probable cause to believe that the ... defendant committed the offense...." Because the petitioner had paroled the respondent, he ordinarily would have been entitled to immediate release. He could be held in custody pending the parole revocation hearing only if the hearing officer were to find probable cause to believe that the respondent violated his parole and, thus, on that account, declined to release him.

charging the respondent with violation of parole, *i.e.* General Condition # 3. Specifically, the Board charged that during his last year at the Institution, the respondent refused fully to participate in the program services "vital to his successful rehabilitation," that, in "repeated instances," he "refused to discuss essential aspects of the motivation for his crime and the factors necessary to prevent its recurrence," and that, despite repeated encouragement, "he consistently failed to cooperate in his treatment" and addressed counseling sessions "in an unsatisfactory manner."

After the preliminary hearing, probable cause to believe that the respondent failed to "conform to all rules of conduct imposed upon him by the Patuxent Institution or an authorized representative," having been found, the hearing officer ordered the respondent's detention at Patuxent pending a formal parole revocation hearing.

Dr. Farrell, an institutional psychologist, who had seen the respondent in group therapy, testified at the formal revocation hearing. Concerning the respondent's participation in therapy, he said that the respondent would become "evasive and general" in response to his questions and that he did not respond "favorably" to, nor "cooperate" in, treatment. Dr. Farrell asserted that, indeed, the respondent had not progressed as far as Dr. Farrell felt he should have. Consequently, he recommended against the respondent being released into the community. The Board agreed. Concluding that the respondent "failed to comply with the instructions and directives of his therapist ... [and] thwarted the purpose and mission of the Institution," it found him in violation of the terms and conditions of his parole.

The respondent appealed to the Circuit Court for Howard County. That court affirmed, stating, "none of the bases set forth in [Maryland Code (1984)] Section 10–215(g)(3) [of the State Gov't Article[10] for a reversal or modification of

10. Maryland Code (1984) § 10–215(g)(3) of the State Government Article states that:

 (g) *Decision.*—In a proceeding under this section, the court may:

the Board's decision have been found." The Court of Special Appeals, in an unreported opinion, reversed. Holding that "revo[cation of appellant's] parole, based on conditions that appellant was not made aware of until the moment his parole was revoked, is a violation of appellant's due process rights under Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment to the United States Constitution," it ordered the respondent's immediate release from incarceration "pursuant to the terms of the 19 November 1987 Review Board decision."

The Patuxent Institution Board of Review filed a petition for certiorari and a motion to stay the execution of the mandate of the Court of Special Appeals. We granted both the petition and the stay.

## I.

■ Characterizing the intermediate appellate court's decision as being based upon the failure of the petitioner physically to release the respondent before initiating revocation proceedings, the petitioner argues that, in ordering the respondent's release on parole, the Court of Special Appeals reversed a final judgment entered by the Circuit Court for Baltimore City in prior, separate proceedings. That judgment, which the respondent did not appeal, prescribed the procedure the petitioner followed in revoking the respondent's parole in this case: it ordered the respondent's release "unless he '... has in fact acted in violation of one or more conditions of his parole [agreement],' authorized review [of the respondent's] conduct since the parole recom-

---

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:
(i) is unconstitutional;
(ii) exceeds the statutory authority or jurisdiction of the agency;
(iii) results from an unlawful procedure;
(iv) is affected by any other error of law;
(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
(vi) is arbitrary or capricious.

mendation to determine whether he 'has in fact breached the conditions of parole' " ...; and directed the petitioner to "focus on behavior for which [the respondent] has exercised control." It asserts, furthermore, that the reversal was on a ground that was not raised by the respondent at any stage of the proceedings. As the petitioner sees it, the July 1987 court order finally and validly determined whether parole revocation proceedings could be initiated, and concluded, prior to the physical release of the parolee. The Court of Special Appeals' holding, referring to the procedure the petitioner followed, that "[i]t was utterly at variance with the concept of due process of law and basic fairness to charge the [respondent] with a violation of a condition of parole when he was not on parole ...," the petitioner maintains, constitutes "a collateral attack on a long-since final order of the Circuit Court for Baltimore City." The petitioner's brief at 11.

The respondent does not dispute that he did not challenge, at the administrative hearing, before the Circuit Court for Howard County, or on appeal to the Court of Special Appeals, the petitioner's right to revoke his parole before he had been physically released. In fact, he does not question, in this Court, either the validity or the propriety of the July 24, 1990 order of the Circuit Court for Baltimore City. The respondent does dispute the petitioner's characterization of the holding of the Court of Special Appeals, and, hence, the issue before this Court. He asserts that the intermediate appellate court held what he has argued from the beginning, that due process was offended when his parole was violated on the basis of a condition of which he had not been previously apprised. Thus, as the respondent sees it, the issue before this Court is not whether he could have been charged with violating his parole when he was not on parole, but rather it is about the notice due a parolee before parole may be violated.

We agree with the respondent. The Court of Special Appeals neither decided nor purported to decide whether due process was offended by parole revocation proceedings

initiated before the respondent's physical release, in other words, before he was paroled.

The intermediate appellate court did not address the merits or propriety of the July 24, 1990 order. That court acknowledged, agreeing with the petitioner, that neither that order nor the procedure it prescribed was before it. It was emphatic, however, that

> [w]hat is before this Court is the decision of the Circuit Court for Howard County affirming the decision of the Patuxent Institution Board of Review's revocation of appellant's parole. As to the decision affirmed by the Circuit Court for Howard County and thus before us on this appeal, the Board of Review violated the appellant's right to due process of law by revoking his parole based on what it claims to be a violation of a condition of his parole of which he had never been given notice. The Circuit Court for Baltimore City could not authorize the Board of Review to do that; and its ruling cannot be construed as authorizing the Board of Review to deny appellant due process of law. The most onerous interpretation of the ruling of the Circuit Court for Baltimore City and the habeas corpus proceeding is that appellant's parole could be revoked before he was released if he had violated some law or engaged in conduct that any parolee may be presumed to know would be a parole violation. Appellant had no reason to appeal that ruling.

Slip op. at 7–8.

The Court of Special Appeals decided this case on an issue that the record reflects troubled the respondent from the very beginning,[11] the adequacy of the notice he was

---

11. At the administrative hearing, the respondent's counsel commented, during cross-examination of the petitioner's chief witness, that he was "still not entirely clear what rule Mr. Hancock violated." In his Petition for Reversal of Administrative Agency Action, filed in the Circuit Court for Howard County, in addition to contending that the "proceedings and decisions violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution," the respondent argued: "Patuxent could not, and did not, identify a valid rule or

given of the conditions of his parole. Indeed, that is precisely what the court said:

We agree with appellant that revoking his parole, based on conditions that appellant was not made aware of until the moment his parole was revoked, is a violation of appellant's due process rights under Article 24 of The Maryland Declaration of Rights and the Fourteenth Amendment to the United States Constitution.

Slip op. at 4. This is also made crystal clear when the court's opinion is read in its full context. After noting that parole revocation proceedings consist of two steps, quoting *Morrissey v. Brewer*, 408 U.S. 471, 479–80, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484, 493 (1972), the court said:

The actions of the Review Board at Patuxent prevent us from even considering the first step [*i.e.* the factual determination whether the parolee has violated one or more conditions of parole]. Appellant was never apprised of the conditions of his "short-lived" parole. The *Gluckstern [v. Sutton*, 319 Md. 634, 574 A.2d 898, *cert. denied*, [498] U.S. [950], 111 S.Ct. 369, 112 L.Ed.2d 331 (1990) ] decision eliminated the gubernatorial approval requirement for Patuxent inmates serving life sentences

---

regulation that [he] allegedly violated" and that "assuming, *arguendo,* that the alleged conduct occurred, Patuxent failed to identify a valid parole condition that encompasses the alleged misconduct." Before the Court of Special Appeals, the respondent presented five issues, three of which clearly implicate the adequacy of the notice he received:

1. When there is no parole condition requiring the attendance in therapy, does the revocation of Mr. Hancock's parole for alleged failings in therapy violate constitutional due process?
2. Can a therapist impose oral conditions regarding therapy when there is no written condition requiring Mr. Hancock to attend therapy?
3. Is it unconstitutionally vague and overbroad to apply a general parole condition requiring obedience to all laws and rules of conduct to alleged failings in therapy?

In his reply brief at p. 2 in the Court of Special Appeals, the respondent lamented, "[he] was charged with violating terms and conditions of parole by conduct which allegedly occurred before he ever received *notice* of those terms and conditions." (emphasis added).

for offenses permitted before 1 July 1982. Appellant falls into this class of Patuxent inmates. It was utterly at variance with concepts of due process of law and basic fairness to charge appellant with a violation of a condition of parole when he was never on parole and *had never been apprised of what the conditions of his parole would be.* Perhaps Patuxent's proceedings would have been more colorable if appellant had violated some state or federal law. Such is not the case. At the revocation hearing, Patuxent personnel testified that appellant had not broken any law or violated any institutional disciplinary rule. It is alleged that appellant violated the last directive of General Condition Number 3, by failing to "conform to all rules of conduct imposed upon him by Patuxent Institution or an authorized representative."

Slip op. at 6–7 (emphasis added). Later, when summarizing its decision, the court observed:

[A]ppellant was entitled to know the conditions of his parole in order that he be able to protect his liberty interest in remaining free, once he was actually released. "[W]hen notice is a person's due, process which is a mere gesture is not due process." *Mullane v. Central Hanover Bank & Trust Company,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 [, 874] (1950).

To be sure, the court did comment that the respondent "was never on parole," and referred to the *Gluckstern* decision, which buttresses that point. Adding "and he has never been apprised of what the conditions of his parole would be," clearly gave its comment context and meaning. Its reference to *Gluckstern* may also be read as the court again making the point that the respondent, having never been paroled, had never previously been apprised of the conditions of his parole.

The Court of Special Appeals, not having decided the issue on the ground alleged by the petitioner and, furthermore, the ground upon which it did decide the case having been properly raised at every stage of the proceeding,

which the petitioner does not seriously dispute, the matter is properly before us.

### A.

Before we can determine whether the respondent's parole was properly revoked, we must consider the nature of parole and its function in the corrections context. The Supreme Court has said, "[t]he essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey,* 408 U.S. at 477, 92 S.Ct. at 2598, 33 L.Ed.2d at 492. Our Legislature has defined it as "a conditional release from imprisonment, granted by the Maryland Parole Commission ... [which] entitles the recipient ... to leave the institution in which he is imprisoned, and to serve the remainder of his term outside the confines thereof...." Md.Code (1957, 1990 Repl.Vol.) Art. 41, § 4–501(5). *See also Murray v. Swenson,* 196 Md. 222, 229, 76 A.2d 150, 153 (1950). The purpose of parole is to help individuals reenter society and to alleviate the costs to society of keeping an individual in prison. *Morrissey,* 408 U.S. at 477, 92 S.Ct. at 2598, 33 L.Ed.2d at 492. While the executive branch, usually through a parole board, is vested with the authority to grant parole and implement its purpose, it is the legislature that establishes the governing procedures and criteria. Arthur W. Campbell, *Law of Sentencing* § 17:6, at 449 (2d ed. 1991). Thus, parole is a matter of legislative grace, not of constitutional right. *Vitek v. Jones,* 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552, 562 (1980); *Greenholtz v. Inmates of Neb. Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675 (1979); *Dunn v. Cal. Dept. of Corrections,* 401 F.2d 340, 342 (9th Cir.1968); *Matthews v. State,* 304 Md. 281, 292, 498 A.2d 655, 661 (1985); *Hutchinson v. State,* 292 Md. 367, 369, 438 A.2d 1335, 1336 (1982); *Belch v. Raymond,* 196 Md. 649, 650, 75 A.2d 96, 97 (1950). Although in Maryland, the Parole Commission ordinarily has exclusive discretionary power to

"[a]uthorize the parole of individuals sentenced under the laws of this State to any penal or correctional institution, jail, or other place of confinement or detention within the State," art. 41, § 4–504(a)(1), in the case of a prisoner at the Patuxent Institution, it is the Board of Review that is given that discretion. Md.Code (1957, 1990 Repl.Vol.), Art. 31B, § 6(c)(2). This has been the policy since the creation of the Institution.

▮▮▮ Parole refers to the administrative action taken after the prison door has closed on the defendant, *State v. Hewett,* 270 N.C. 348, 352, 154 S.E.2d 476, 479 (1967), while probation, which may be ordered as a part of a split sentence, *see* Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 641A(c); *Matthews v. State,* 304 Md. 281, 498 A.2d 655 (1985), ordinarily refers to judicial action taken prior to its being closed. *Hewett,* 270 N.C. at 352, 154 S.E.2d at 479. Notwithstanding that parole and probation differ in terms of when they occur in the correctional process, each enables criminal offenders to serve at least part of their sentences in the community rather than in prison and requires the offenders to adhere to prescribed conditions in order to retain their conditional freedom. Neil P. Cohen and James J. Gobert, *The Law of Probation and Parole,* § 1.01, at 4–5 (1983). Because both the revocation of parole and the revocation of probation pertain to punitive sanctions imposed on a defendant for the commission of a criminal act, *Bergstein v. State,* 322 Md. 506, 515, 588 A.2d 779, 783 (1991), for due process purposes, there is no relevant difference. *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656, 661–62 (1973).

▮▮▮ Since parole is a matter of grace and not of right, the state may condition continuance of parole on the parolee's compliance with certain prescribed conditions. *Morrissey,* 408 U.S. at 478, 92 S.Ct. at 2598, 33 L.Ed.2d at 492. Such conditions may restrict the parolee's conduct and activities "substantially beyond the ordinary restrictions imposed by law on an individual citizen," *id.,* so long as they

are not illegal or unrelated to rehabilitative purpose, or impossible to perform. *Arciniega v. Freeman,* 404 U.S. 4, 4, 92 S.Ct. 22, 22, 30 L.Ed.2d 126, 127 (1971); *Campbell,* § 17.9, at 464. Generally, such conditions have been held proper when they are not vague, indefinite or uncertain, *Smith v. State,* 306 Md. 1, 7, 506 A.2d 1165, 1168 (1986), and until they are agreed to by the offender, the grant of parole is ineffective. *Hopkins v. North,* 151 Md. 553, 135 A. 367 (1926); *Campbell, supra,* § 17.9, at 465. *See also Lanzetta v. N.J.,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888, 890 (1939) (criminal defendant entitled to be informed of what the State commands or forbids); *Costa v. State,* 58 Md.App. 474, 483, 473 A.2d 942, 946–47 (1984) (agent's instructions to probationer to enter drug therapy not within the general condition that probationer follow agent's instructions).

■■■■■ There are usually two types of conditions. The first type forbids conduct which is also prohibited to the ordinary citizen, *e.g.,* commission of a criminal offense. The other regulates conduct in areas not affecting the ordinary citizen or in which the ordinary citizen is entirely free to act. Examples of this type of condition include requiring compliance with institutional conditions, prohibiting associations, and regulating the consumption of alcohol, interstate travel, possession of firearms, curfews, and the frequenting of certain places. *See Morrissey,* 408 U.S. at 478, 92 S.Ct. at 2598–99, 33 L.Ed.2d at 492, Cohen and Gobert, *supra,* § 4.04 at 165–66. *See also* Michael Gottesman and Lewis J. Hecker, Note, *Parole: A Critique of Its Legal Foundations and Conditions,* 38 N.Y.U.L.Rev. 702, 720–21 (1963). A violation of either type may result in revocation of parole, but, in the latter, there is more room for the exercise of discretion. *Id.* at 721. While parole may be revoked if the parolee fails to comply with one or more parole conditions, Art. 41, § 4–511(a); *Smith,* 306 Md. at 7, 506 A.2d at 1168; *Howlett v. State,* 295 Md. 419, 425, 456 A.2d 375, 378 (1983); *Dean v. State,* 291 Md. 198, 202, 434 A.2d 552, 554 (1981), non-compliance must occur when the offender is on parole.

*State v. Miller,* 289 Md. 443, 446, 424 A.2d 1109, 1111 (1981); *State v. Berry,* 287 Md. 491, 499, 413 A.2d 557, 562 (1980); *Cornish v. State,* 65 Md.App. 213, 214, 500 A.2d 295, 295 (1985); Cohen and Gobert, *supra,* § 9.05, at 423.

*Miller* and *Berry, albeit* dealing with probation, are instructive. In *Berry,* the State alleged that the defendant violated probation by failing to pay support and maintenance for his wife and children. 287 Md. at 499, 413 A.2d at 559. The alleged violation occurred during the probation period, but the revocation proceedings were not completed until probation had expired. In *Miller,* the defendant, who had been convicted of breaking and entering and possession of narcotics paraphernalia, was placed on probation in lieu of a suspended sentence. After the probationary period had expired, he was charged with, and convicted of, violating the terms and conditions of his probation. The defendant argued on appeal that the trial court lacked jurisdiction to revoke his probation since the arrest warrant was issued, and the revocation hearing was held, after probation expired. 289 Md. at 444, 424 A.2d at 1110.

We held in both cases that probation revocation proceedings may be pursued and may be held after the probationary period has expired, *so long as the act constituting a violation of probation occurred during the probationary period.* 289 Md. at 446, 424 A.2d at 1111; 287 Md. at 499, 413 A.2d at 562. Revocation of probation, in other words, must be based on conduct occurring subsequent to the grant of probation, but prior to its expiration. See *Dean,* 291 Md. at 203, 434 A.2d at 555, in which, reversing a judgment finding the probationer in violation of probation, we commented, "if the trial court had relied solely upon independent, probative evidence showing that the probationer had committed a crime *subsequent* to probation, revocation of probation would have been appropriate." (emphasis added). See also *Cornish,* 65 Md.App. 213, 500 A.2d 295 (probation revocation reversed where State failed to prove new conviction was based on conduct occurring during period when the probationer was subject to the

condition violated). *Compare Soden v. State,* 71 Md.App. 1, 523 A.2d 1015 (1987) (Although no direct evidence of dates of commission of offenses was presented, evidence was sufficient to establish that the defendant could only have committed crimes following his release from prison, thus during his probationary period); *Nelson v. State,* 66 Md.App. 304, 503 A.2d 1357 (1986) (Subsequent convictions were for violations of the law occurring while the appellant was on probation).

Other jurisdictions are in accord. In *Demchak v. State,* 351 So.2d 1053 (Fla.Dist.Ct.App.1977), the defendant, on probation since April 28, 1975, was convicted of offenses occurring on or about March 13, 1975 and continuing through May 5, 1975. *Id.* at 1054. The lower court's judgment revoking probation was reversed, the appellate court holding that while probation may be revoked on the basis of a conviction for a subsequent crime, the illegal activity giving rise to the conviction must occur during the probationary period; "[i]mproper conduct occurring *prior* to entry of the probation order cannot be the basis for revocation even though the conviction resulting from such conduct occurs while the defendant is on probation." *Id.* (emphasis added). *See also U.S. v. Drinkall,* 749 F.2d 20 (8th Cir.1984) (act occurring before conviction); *U.S. v. Paden,* 558 F.Supp. 636 (D.C.Cir.1983) (conduct occurring after end of maximum period of probation); *Martinez v. Kirbens,* 710 P.2d 1138 (Colo.Ct.App.1985) (conduct occurring after end of maximum probation period); *Hinton v. State,* 462 So.2d 583 (Fla.Dist.Ct.App.1985) (violation occurring prior to entry of probation order); *Bell v. State,* 656 S.W.2d 502 (Tex.Ct.App.1982) (cannot revoke probation for violation occurring before judgment placing the defendant on probation); *Bryce v. Commonwealth,* 13 Va.App. 589, 414 S.E.2d 417 (1992) (Where conditioned on future good conduct, revocation must be predicated on conduct occurring subsequent to imposition of suspension).

An exception, recognized in this State, *see Matthews v. State,* 304 Md. 281, 498 A.2d 655 (1985), permits rescission

of parole or probation for misconduct occurring after parole or probation has been granted, but before it becomes effective. Cohen & Gobert, § 4.04 at 165. In *Matthews*, the defendant was sentenced to five years' imprisonment with all but nine months suspended and three years' probation upon his release from custody. *Id.* at 283, 498 A.2d at 656. While still in custody, serving his sentence, but on work release, he was arrested and subsequently convicted of violations of the controlled dangerous substance laws, receiving a sentence of imprisonment. *Id.* at 283–84, 498 A.2d at 656. The defendant was then convicted of violating his probation and the suspension of that portion of the sentence not served was stricken. We rejected the defendant's argument that he could not lawfully be on probation while serving a prison sentence, *id.* at 284, 498 A.2d at 656, and thus could not have violated probation. We held that "a trial court has the authority to revoke probation *for criminal acts* committed *after* the imposition of sentence but before service of probation based on a condition implicit in the grant of probation that the defendant obey all laws." *Id.* at 292, 498 A.2d at 660 (emphasis added, footnote omitted). *See also U.S. v. Veatch,* 792 F.2d 48 (3rd Cir.), *cert. denied,* 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986) (revocation of probation for conviction of new offense committed before commencement of probation term but after sentence imposed); *U.S. v. Wright,* 744 F.2d 1127, 1130 (5th Cir.1984) (revocation of probation before probationary term begins permitted if the defendant commits an illegal act); *U.S. v. Dane,* 570 F.2d 840, 844 (9th Cir.1977) ("Knowledge of the criminal law is imputed to the [parolee] as is an understanding that violation of the law will lead to the revocation of [parole]"); *Layson v. Montgomery,* 251 Ga. 359, 306 S.E.2d 245 (1983) (revocation of probation for conduct occurring after entry of order of probation but before service of probation begins); *State v. Sullivan,* 197 Mont. 395, 642 P.2d 1008 (1982) (revocation of probation for violation occurring before commencement of probation term but after imposition of sentence); Lee R. Russ, Annotation,

*Power of Court to Revoke Probation for Acts Committed After Imposition of Sentence But Prior to Commencement of Probation Term,* 22 A.L.R. 4th 755 (1983). Judge McAuliffe, speaking for this Court, put it thusly:

If, at any time before the defendant has completed the maximum period of probation, or before he has begun service of his probation, he should commit offenses of such a nature as to demonstrate to the court that he is unworthy of probation ... the court could revoke or change the order of probation.

*Matthews,* 304 Md. at 291, 498 A.2d at 660 (quoting *Com. v. Dickens,* 327 Pa.Super. 147, 475 A.2d 141 (1984)).

Parole also may be rescinded when it has been obtained by means of fraud or lack of candor. Cohen & Gobert, *supra,* § 9.05 at 423. In *U.S. v. Kendis,* 883 F.2d 209 (3rd Cir.1989), an attorney, who, pursuant to a plea agreement, pled guilty to bank fraud, was sentenced to five years imprisonment, with all but six months suspended, in lieu of five years probation. A requirement of the plea agreement was that he pay restitution to the potential victims of the fraud. Prior to the start of the probationary period, the government moved to revoke the defendant's probation, maintaining that he used money entrusted to him by other clients to make restitution. *Id.* at 210. The court affirmed the revocation of probation even though the conduct on which it was based occurred prior to service of probation. It opined that revocation was proper because the defendant "relied heavily on his acts of restitution to persuade the district court to give him a relatively light prison sentence ... and ... failed to reveal that restitution had been made with clients' money." *Id. See also Bryce v. Com.,* 414 S.E.2d at 418 (use of assumed name at trial constituted fraud on the court).

Conduct which not only occurred before the parole or probation decision was made but was known to the granting authority may, but need not, support rescission. *Compare Fox v. U.S. Parole Comm'n,* 517 F.Supp. 855

(D.Kan.1981) with *Ready v. U.S. Parole Comm'n,* 483 F.Supp. 1273 (M.D.Pa.1980). Cohen and Gobert have analyzed the results and their effect:

It is submitted that the result in *Fox* makes better sense in light of the purposes of parole. If the basic goal is to release individuals who are rehabilitated and who are likely to live a crime-free life in the community following release, any information bearing on that decision, no matter when received should be considered. Indeed, ignoring such information may do the public a grave disservice since it could result in the release of a dangerous individual. To place on the parole board the responsibility for a full investigation of all allegations, rumors, and the like may also be overly burdensome. On the other hand, the *Fox* court's approach, unlike that of the court in *Ready,* has the disadvantage of potentially subjecting parole and probation decisionmakers to community and political pressures to rescind an already fixed release date. It also encourages the board to be less than thorough in preparing cases for decision.

Cohen & Gobert, § 45, at 168.

 The Circuit Court for Baltimore City issued an order requiring the petitioner to parole the respondent and to release him from custody unless it filed, within a specified time an action for violation of parole and subsequently proved the violation.[12] The court contemplated and, indeed, stated, that the Board would be "entitled to review [the respondent's] conduct since the [1987] parole recommendation to determine whether he 'has in fact breached the conditions of parole.'" Although it did not order a new parole eligibility determination, only parole and a revocation

---

12. As we stated, granting parole is purely an executive function, *Murray v. Swenson,* 196 Md. 222, 229, 76 A.2d 150, 153 (1950), not a judicial one. Consequently, the judiciary cannot grant parole, its function is limited to granting probation. *See Simms v. State,* 65 Md.App. 685, 689, 501 A.2d 1338, 1341 (1986). In this case, the circuit court did not parole the respondent, it ordered Patuxent Institution's Board of Review to do so.

hearing, the order in this case is reminiscent of the trial court's order in *Gluckstern*, the merits of which we did not reach. *See* note 6, *supra.* That the court ordered the petitioner to parole the respondent and then conduct revocation proceedings was obvious to all parties. Although we had never passed on such an order, undoubtedly, the petitioner believed it was proper and, more important, that it could meet the burden that the order imposed. Therefore, based on that order, and without noting an appeal to challenge its appropriateness, it served on the respondent an Order of Parole, which expired one year later, including special and general terms and conditions of parole, a Request for Parole Revocation Warrant, charging the respondent with violation of parole, and a notice of preliminary hearing. The parole violation, it was alleged, occurred in 1989, the respondent's last year at the Patuxent Institution.

The petitioner does not argue, and the facts do not indicate, that the respondent violated any condition of parole after August 1990, when he was served with the Order of Parole. Indeed, between April 1990 and that date, he was not even at Patuxent. Moreover, the petitioner does not assert, and the evidence does not support, that the respondent broke any laws either prior to, or after August 8, 1990. Nor is there a contention that the respondent defrauded the court in order to obtain parole. The contention is, and the evidence was offered to prove, rather, that the respondent violated parole by failing to conform to a rule of conduct imposed upon him by the Patuxent Institution or authorized representatives, *i.e.,* to cooperate with his therapist. That conduct occurred, and was evident, *prior* to the respondent's parole. The respondent had not, at that time, been paroled or apprised of the conditions that would pertain were he paroled, however.

In *Gluckstern*, the trial court ordered, as the appropriate relief for violation of the defendant's rights, a new parole hearing. Only if parole were granted after that hearing did the court authorize revocation of parole and, then, only "on the basis of any actions or conduct ... occurring after [the

date he was recommended for parole]." 319 Md. at 647, 574 A.2d at 904. The trial court in this case did not order a new parole hearing even though it probably could have—much had changed since 1987 when the Board recommended the respondent for parole and the Board undoubtedly perceived the respondent as no longer eligible for parole, a fact of which the court was made aware. Instead, the court ordered the Board to parole the respondent and revocation proceedings to forestall the respondent's actual release from custody were authorized.

The Baltimore City Circuit Court's order can only be construed as authorizing revocation proceedings after parole had been ordered and to permit those proceedings on the basis of conduct occurring before parole was either recommended or ordered and even though it is not proscribed by any parole condition. A court may not, however, authorize revocation of parole or probation on a ground not otherwise permitted by law. *See also Baldwin v. State*, 324 Md. 676, 684, 598 A.2d 475, 479 (1991) (decision to revoke probation may not be based on an improper ground). Parole may be revoked for violation of a condition of parole during the term of parole, for commission of a crime, whether or not the parole term has started, or for *misconduct* occurring either before, or after, the grant of parole. When violation of a condition of parole is alleged, the parolee must be aware that the conduct constituting the violation is prohibited by a condition of parole. None of the foregoing has occurred in this case.[13]

---

**13.** The petitioner also maintains that, because the Board's decision to revoke the respondent's eligible person status was based on acts committed after the Board's initial recommendation to the Governor in 1988, its actions were consistent with *Matthews v. State*, 304 Md. 281, 498 A.2d 655 (1985). Whether that is so, or not, is a matter that is not before us. The respondent does not challenge that action. It should be noted, however, that revocation of eligible person status and revocation of parole, once granted, may rest on entirely different considerations.

## II.

### A.

■■■■■■ The fact that a parole system exists does not, in and of itself, give rise to a constitutionally protected liberty interest in parole release. *Bd. of Pardons v. Allen*, 482 U.S. 369, 373, 107 S.Ct. 2415, 2418, 96 L.Ed.2d 303 (1987). On the other hand, a statute, administrative rules or regulations, or accepted practices may provide such an interest. *Cohen & Gobert, supra*, §§ 3.13–3.16, at 133–140. Whatever its source, in order that parole be given effect, there must be "justifiable reliance on maintaining [a] conditional freedom" instead of a "mere anticipation or hope of freedom." *Morrissey*, 408 U.S. at 482 n. 8, 92 S.Ct. at 2601 n. 8, 33 L.Ed.2d at 495 n. 8, quoting *U.S. ex rel. Bey v. Conn. Bd. of Parole*, 443 F.2d 1079, 1086 (2nd Cir.), *vacated as moot*, 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159 (1971). This is so because there is a critical and substantial difference between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires, *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 9, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668, 676 (1979); "[T]here is a human difference between losing what one has and not getting what one wants." *Id.* at 10, 99 S.Ct. at 2105, 60 L.Ed.2d at 677, quoting *Bey*, 443 F.2d at 1086. (citations omitted). Procedural due process protections extend to the parolee's situation because "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Morrissey*, 408 U.S. at 482, 92 S.Ct. at 2601, 33 L.Ed.2d at 494–95. *See also Greenholtz*, 442 U.S. at 10, 99 S.Ct. at 2105, 60 L.Ed.2d at 676.

In 1987, the former director of Patuxent Institution recommended the respondent for parole; at that time, the statute required the Governor to approve the parole of all inmates serving life sentences at the Institution. That we subsequently held gubernatorial approval to be unconstitu-

tional as applied to inmates such as Hancock, whose crimes were committed prior to 1982, 319 Md. at 669, 574 A.2d at 915, thus rendering the Governor's approval unnecessary, did not change the nature of the Board's actions. A recommendation of parole did not automatically become an order of parole. Therefore, that action did not give the respondent a liberty interest. In *Gluckstern*, we did not hold that the excision of the gubernatorial recommendation requirement entitled the inmate to be released immediately.

The Board never paroled the respondent either before or after the Governor's rejection, nor did it issue an order after the *Gluckstern* opinion. Thus, the respondent could not justifiably have relied on the 1987 recommendation to maintain conditional freedom. Indeed, the respondent never achieved conditional freedom pursuant to that recommendation. In short, the recommendation merely furnished the respondent with an anticipation or hope of freedom. *Morrissey*, 408 U.S. at 482 n. 8, 92 S.Ct. at 2601 n. 8, 33 L.Ed.2d at 495 n. 8.

B.

The August 1990 circuit court order did not parole the respondent. While it directed the petitioner to do so absent the occurrence of a certain condition, that order also did not provide the respondent with a liberty interest in parole release.[14] On the other hand, when, on August 8, 1990, it served the respondent with an Order of Parole and a copy of a parole agreement, the petitioner effected the respondent's parole and, in the process, created in him a liberty interest in parole release. It is the order of parole, which, by its terms, was for one year, from which the liberty

---

**14.** The court order by its terms, provided due process protection for the respondent. Release was mandated unless "appropriate and legally mandated procedures to revoke parole" were commenced immediately. If such proceedings were initiated, the order required that a revocation hearing be held to establish whether the respondent violated parole. Of course, it required that the respondent be given notice of the violations alleged.

interest flowed. The circuit court order merely set the stage.

Notwithstanding its failure to object to the circuit court order and to file an appeal challenging the court's authority to pass it, the petitioner asks us to declare the order invalid and to excuse its own omission. It focuses on the facts that the respondent has never been released from custody and that, indeed, the court only ordered his release in the event that the petitioner did not proceed with revocation proceedings. From these premises, the petitioner argues that the respondent never acquired a liberty interest because a person who is actually on parole occupies a position that "is very different from that of confinement in a prison." *Morrissey*, 408 U.S. at 482, 92 S.Ct. at 2601, 33 L.Ed.2d at 495. It relies on *Jago v. Van Curen*, 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981).

*Jago* is inapposite. There, a prisoner received a favorable parole decision, which was communicated to him along with a parole agreement stating that he had "earned the opportunity of parole" and that the Board "is therefore ordering a Parole Release in your case." 454 U.S. at 15, 102 S.Ct. at 33, 70 L.Ed.2d at 16. Before that decision was made effective, the parole board, having learned that he had not been entirely truthful during his hearing, rescinded it. It did so without first affording the prisoner a hearing. *Id.* The Court of Appeals for the Sixth Circuit held that the "mutually explicit understanding" created between the prisoner and his parole board by the latter's original affirmative recommendation, *id.* at 16, 102 S.Ct. at 34, 70 L.Ed.2d at 16, gave the prisoner a liberty interest. The Supreme Court rejected the appellate court's analysis and opined, "mutually explicit understandings" could engender property interests, but not a liberty interest. *Id.* at 17, 102 S.Ct. at 34, 70 L.Ed.2d at 17–18. It observed further that, in property interest cases, there often is an implied contract aspect of the understanding which is not present in parole cases. *Id.* The Court concluded that, since the prisoner did not have a *statutorily* protected interest and a mutually explicit under-

standing could not create one, he was not entitled to a hearing, the due process clause being inapplicable. *Id.* at 21, 102 S.Ct. at 36, 70 L.Ed.2d at 19.

The facts *sub judice*, contrasted with those in *Jago*, reveal that the respondent's parole was so far effectuated that he had been served with the Order of Parole, apprising him of the terms and conditions with which he was required to comply, which he signed, both acknowledging the conditions and accepting them and the parole. The respondent in *Jago* had not been paroled, but merely recommended for parole. The critical decision in the case before us was not favorably to recommend parole; rather, it was to grant it. Such a decision may not, without complying with due process, be rescinded based on new information discovered before physical release has actually occurred. Moreover, in this case, unlike in *Jago*, a parole revocation hearing was mandated by the order pursuant to which the parole order was issued and the revocation proceedings were authorized and, of course, the Order of Parole created a liberty interest.[15] As the Court of Special Appeals put it: the respondent was accorded the rights of a parolee.

The petitioner is correct; the order of the Circuit Court for Baltimore City is a final order which may not be attacked collaterally. *See Coles v. State*, 290 Md. 296, 303, 429 A.2d 1029, 1032 (1981). That prohibition, however, also extends to the petitioner. Having fully complied with the court order and paroled the respondent, *i.e.*, accorded him the rights that status requires and that the court's order mandated, the petitioner may not now argue that it need not have done so. The court order, after all, pertained to a matter over which the court was competent to act. *See Stewart v. State*, 287 Md. 524, 526, 413 A.2d 1337, 1338

---

**15.** The court order may well have been inartfully drafted. Although it states that parole is conditioned on the petitioner's initiation of revocation proceedings, the context makes clear that it is the respondent's release from custody that it is intended to address. Revocation proceedings may necessitate detention of the parolee pending their resolution; they do not require, nor negate, the parole decision.

(1980); *First Federated Commodity Trust Corp. v. Comm'r of Securities*, 272 Md. 329, 334, 322 A.2d 539, 543 (1974).

## C.

 The petitioner next contends that the respondent's parole eligibility should have been determined under the 1977 statute, *see* Maryland Code (1957, 1976 Repl.Vol., 1980 Cum.Suppl.) Art. 31B, § 11(b),[16] the inapplicability of the 1982 statute having been established. It maintains that the respondent was not eligible under that statute. As we have seen, the trial court ordered the petitioner to parole[17] the respondent. At no time, either before or after that order, was the issue of the respondent's eligibility for parole under the pre–1982 statute raised and, of course, the court did not

---

**16.** *See infra note* 5. Article 31B, § 11(b)(1)–(2) provides:

(b) *Action by board of review prior to expiration of sentence.*—At any time after transfer of a person to the Institution for treatment as an eligible person but prior to the expiration of the person's sentence, the board of review, upon review of the person may take the following action:

(1) If the board of review concludes that the person is no longer an eligible person but should remain confined until released on parole in accordance with normal Parole Commission standards or expiration of his sentence or the inmate requests a transfer in writing, the director shall notify the Commissioner and send him a copy of the evaluation team's report. Within 90 days after that notice, the person shall be delivered to the appropriate correctional facility designated by the Commissioner. This transfer shall not affect any right to parole consideration that the person may then have.

(2) If the board of review concludes that (1) it will not impose an unreasonable risk on society and (2) it will assist in the treatment and rehabilitation of the eligible person, it shall grant a parole from the Institution for a period not exceeding one year. The board of review may attach reasonable conditions to the parole, at any time make reasonable and appropriate modifications of these conditions, and revoke the parole if it finds that the person violated a condition of the parole. The board of review shall review the person's status prior to the expiration of the parole period, and may extend the parole.

**17.** In this context, parole must be read as meaning "released from custody."

address it. By ordering the respondent's parole, the court necessarily assumed his present eligibility, whether under the pre–1982 statute or the 1982 statute after the gubernatorial consent requirement was excised. By complying with the court order, the petitioner, at the very least, acquiesced. Its acquiescence was underscored and made manifest when it thereafter, as we noted earlier, utterly failed timely to challenge that order on appeal. The issue of the respondent's parole eligibility, therefore, is not now before this Court.

### III.

Noting that "[i]t was utterly at variance with concepts of due process of law and basic fairness to charge appellant with a violation of a condition of parole when he was never on parole and had never been apprised of what the conditions of his parole would be," slip op. at 6, the Court of Special Appeals held that the respondent's parole was improperly revoked: the "appellant was entitled to know the conditions of his parole in order that he be able to protect his liberty interest in remaining free, once he was actually released." Slip op. at 8.

As a matter of constitutional law, a parolee reasonably may be expected to follow only such conditions of parole of which he or she is made aware. *Cohen & Gobert, supra,* § 5.04 at 193. As we have seen, however, parole can be rescinded, as opposed to revoked, when the parolee engages in conduct which is not violative of a formal parole condition. The parolee's liberty cannot be forfeited as a result of that conduct "unless he [or she] is given prior fair warning." *U.S. v. Dane,* 570 F.2d 840, 844 (9th Cir.1978).

The Order of Parole and the parole agreement with which the respondent was served on August 8, 1990 required the respondent to "conform to all rules of conduct imposed by Patuxent Institution or an authorized representative." The Request For Parole Revocation Warrant, with which the

respondent was also served, alleged that the respondent violated this precise condition. Nothing in the record indicates that, in 1987, when the Board recommended that he be paroled, that the respondent was apprised of the conditions with which he would have to comply or was given a parole agreement listing them. So far as this record reveals, the respondent was first notified of the conditions of his parole at the same time that he was informed that he violated one of them.

■■■ Because the conduct on the basis of which the revocation was premised was not criminal—the petitioner has conceded that the respondent has not violated any federal or state law or municipal ordinance—and did not constitute an institutional infraction, *i.e.*, it was not the institutional equivalent of criminal conduct, we hold that the respondent's parole was improperly revoked, he not having been notified, in advance, of the condition allegedly violated. Both common sense and due process demands this result. *See Swan v. State*, 200 Md. 420, 425, 90 A.2d 690, 693 (1952) (whether a condition of probation has been violated depends upon the terms of the suspension, *which were made known to the probationer*, and by which he was to be guided in his conduct). *See also Benboe v. State*, 738 P.2d 356 (Alaska App.1987). In that case the court reversed a probation revocation for failure of the defendant to participate in sex therapy while imprisoned, where the order was not a condition of probation and covered a period prior to the commencement of probation because, the court opined, the order "served no clear notice upon [the defendant] that the probationary status of his sentence hinged on his compliance with it." *Id.* at 360.

In the instant case, as in *Benboe*, the respondent's parole agreement did not contain any condition that he attend therapy, nor was the respondent made aware that his progress or, more accurately, Dr. Farrell's perception of his progress, in therapy was an actual condition of parole

which, if violated, would result in loss of liberty.[18]

Additionally, the violation of the requirement to attend and participate in therapy is not a violation of a criminal law, which all parolees and probationers are aware is a ground for parole/probation revocation. See *Dane,* 570 F.2d at 844 (knowledge of the criminal law is imputed to parolee/probationer as an understanding that violation of the *law* will lead to revocation of parole/probation).

■■■ To be sure, the requirement that the respondent conform his conduct to the Board's rules and regulations is an appropriate condition of parole because it bears a direct relationship to its purpose. Where conduct failing to conform to that requirement occurs after a favorable parole decision has been made, but before it has been effectuated, it may very well be appropriate to rescind the parole on the basis of that conduct. *See Cohen & Gobert,* § 4.04 at 165–66. A different rule necessarily applies after the decision has been effectuated. In the former case, due process may not require a hearing since the potential parolee will only have an expectation of liberty. *See Morrissey,* 408 U.S. at

---

**18.** In *Smith v. State,* 306 Md. 1, 7, 506 A.2d 1165, 1168 (1986), we made clear that the conditions may not be vague, indefinite, or uncertain. There, the trial court revoked the defendant's probation for his alleged failure to comply with the condition that he undergo drug screening. We reversed. We stated, however, that a general condition may be reasonable and effective if the probationer were provided with directions defining the specific conduct required for compliance. *Id.* at 10, 506 A.2d at 1170. Thus, "[a] general condition of probation is permissible only 'so long as it is contemplated that the court or its designee (usually the probation authority) will provide the probationer with reasonable, specific direction within the ambit of the initially expressed general condition, and such guidance is in fact given.'" *Id.* at 7, 506 A.2d at 1168 (citation omitted). *See also Hudgins v. State,* 292 Md. 342, 347, 348, 438 A.2d 928, 930–31 (1982) (requirement that the probation, as a "special condition", "cooperate with the Maryland State police in tracking down criminals" was acceptable provided the probationer received specific directions as to what the conditions entailed).

The Court of Special Appeals, alternatively, characterized the conditions with which the respondent allegedly failed to comply as vague, indefinite and uncertain. Given the view we take of this case, we need not and, therefore, do not reach that issue.

482 n. 8, 92 S.Ct. at 2601 n. 8, 33 L.Ed.2d at 495 n. 8. In the latter, a hearing will be required because the liberty interest would have been acquired by virtue of the grant of parole. *See Id.* at 482, 92 S.Ct. at 2601, 33 L.Ed.2d at 495.

## IV.

Finally, the petitioner argues that it has no authority to parole the respondent because, as of April 1990, he was neither an "eligible person" pursuant to the Patuxent Institution statute nor an inmate at the Institution. Furthermore, it points out, the respondent's parole expired on August 2, 1991, thus mooting the issue.

It continues to be significant that the petitioner did not appeal the circuit court order directing it to parole the respondent. Its authority to parole one who was not an "eligible person" pursuant to the Patuxent Institution statute or even an inmate at the institution was certainly a proper issue for appellate review and, indeed, may have been a complete defense to the respondent's challenge. Instead of appealing, however, the petitioner proceeded as if it were authorized to parole the respondent. Although he was not an inmate at Patuxent at the time, it obtained his presence, served the necessary parole papers on him and only then proceeded with revocation proceedings. Subsequently answering the respondent's Petition for Reversal of Administrative Agency Action, the petitioner admitted that it paroled the respondent, it did not contend, then, as it does now, that it was not authorized to do so. The petitioner's conduct, in short, was, and is, inconsistent with one lacking authority. Only when this matter reached this Court did the petitioner argue that it lacked authority to have done what it did. The petitioner cannot now be heard to say that it could not parole the respondent because he was not an "eligible person" or that the issue is now moot. *See Burroughs v. Garner,* 43 Md.App. 302, 405 A.2d 301 (1979) (Doctrine of equitable estoppel operates to prevent party from asserting rights if it would be inequitable and unconscionable to assert such rights).

## V.

The Court of Special Appeals ordered the respondent's release pursuant to the 1987 Review Board parole recommendation. That was not, as we have said, anything more than a recommendation of parole. The August 8, 1990 Order of Parole, however, effectuated the respondent's parole and contained the required notification of its terms and conditions. Release should be in accordance with that Order.

More than two years have passed since the respondent's parole. We have previously acknowledged that parole may be rescinded even before its physical service has begun, if the parolee has violated the law, *see Matthews*, 304 Md. at 291, 498 A.2d at 660, or its institutional equivalent, that is, for misconduct which makes it apparent that the parolee is presently unworthy of parole. Thus, before the respondent is released, the Board is entitled to conduct an investigation of the institutional records to determine whether the respondent has engaged in such misconduct. An allegation that the respondent has engaged in such misconduct, because he has already been paroled, must be tested by a prompt hearing. *See Morrissey*, 408 U.S. at 484, 92 S.Ct. at 2602, 33 L.Ed.2d at 496.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, EXCEPT THAT THE RESPONDENT SHALL BE RELEASED PURSUANT TO THE TERMS OF THE AUGUST 8, 1990 ORDER OF PAROLE.

COSTS TO BE PAID BY THE PETITIONER.

Dissenting opinion by McAULIFFE, J. in which MURPHY, C.J., and KARWACKI, J. join.

McAULIFFE, Judge, dissenting.

The Court is correct in identifying procedural faults growing out of Patuxent's attempts to follow an ambiguous order issued by a trial judge in 1990. Because the procedure employed subsequent to the trial judge's order diverted the attention of all parties from the basic question which

must be addressed—a question that was adequately identified by the trial judge's order—Hancock is entitled to a new hearing at which the Patuxent Institution Board of Review (the Board) is entitled to show that Hancock's conduct subsequent to the initial recommendation of parole justifies rescinding or refusing parole.

In January 1977, Hancock was sent to the jurisdiction of the Division of Corrections for life plus 35 years for the murder of a woman and for committing an assault with intent to murder on the woman's 11-year-old son. In April of 1977 Hancock was found to be a "defective delinquent" and was accepted at Patuxent Institution. In September, 1977, after the law governing eligibility for acceptance at Patuxent changed, Hancock was found to be an "eligible person," and remained at Patuxent.

On 19 November 1987 the Board recommended to the Governor of Maryland that Hancock be granted parole. On 13 July 1988, the governor rejected that recommendation. On 1 December 1988, Hancock was removed from work release when that program was suspended for all inmates. In November, 1989, the Board was advised of "problems" with Hancock because of alleged deterioration of performance, and on 15 March 1990, the Board revoked Hancock's work release status. On 5 April 1990, the Board determined that Hancock was no longer an eligible person, and ordered his release from Patuxent and transfer to the Division of Corrections.

On 7 June 1990, this Court decided that the statutory requirement of gubernatorial approval for parole from Patuxent, which had been added by Chapter 588 of the Acts of 1982, could not constitutionally apply to persons incarcerated for crimes committed prior to the passage of that act. *Gluckstern v. Sutton,* 319 Md. 634, 672, 574 A.2d 898, *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990). On 24 July 1990, Judge John Carroll Byrnes entered an order in a Habeas Corpus case earlier brought by Hancock, holding that the granting of parole to Hancock was not subject to gubernatorial approval and directing further pro-

ceedings in accordance with Hancock's claimed right to parole.

On 8 August 1990, purporting to act in accordance with Judge Byrnes' order of 24 July, Patuxent issued an "Order of Parole" for Hancock. On the same day, Dr. John Farrell, a psychologist at Patuxent, filed a request for a parole revocation warrant; a preliminary hearing was held; and Hancock was "removed" from parole pending a full hearing. On 6 September, the Board held a hearing and ordered Hancock's parole revoked. Hancock's appeal from that decision is now before the Court.

Matters began to go awry in this case when Judge Byrnes entered the order of 24 July 1990. Judge Byrnes was entirely correct in holding that *Gluckstern v. Sutton, supra,* applied to Hancock's case because Hancock's criminal activity occurred before passage of Ch. 588 of the Acts of 1982. Although Hancock may have been entitled to no more than a new parole hearing unfettered by the necessity for gubernatorial approval, I cannot fault Judge Byrnes' decision to give Hancock the benefit of the Board's previous approval of parole, and to place upon those who would resist parole the burden of showing circumstances that occurred subsequent to the initial decision which would persuade the Board that parole at the present time would be inappropriate. Judge Byrnes said in his order:

> The Court is mindful of the fact that the petitioner may have engaged in conduct since the initial parole decision by the Board of Review that would militate against his release on parole at this time.

Had Judge Byrnes left it at that, an appropriate hearing would have been held and, I am satisfied, Hancock would have been denied parole because: 1) as a matter of law he was no longer eligible for parole from Patuxent; and, 2) his conduct subsequent to 19 November 1987 demonstrated that he posed a danger to society.

Unfortunately, Judge Byrnes directed the use of a particular procedure to test whether Hancock should be released

on parole. He ordered the Board to view the matter as if Hancock had been on parole since the entry of the Board's original recommendation in 1987, and to release him on parole unless it issued a parole revocation retake warrant on or before 10 August 1990, alleging "conduct since the initial parole decision ... that would militate against his release on parole at this time." Judge Byrnes recognized that utilizing this hypothetical framework posed certain problems because Hancock had in fact been in custody and was therefore unable to conform to certain standard conditions of parole, such as maintaining a job and reporting to a parole officer. He made it clear, therefore, that the Board "should focus on behavior over which petitioner has exercised control." As an example, he said, proof of Hancock's violation of one of Patuxent's major disciplinary rules would suffice. The judge's order did not consistently differentiate between hypothesis and reality, however, and in a single sentence the Board was directed "to parole [Hancock] on or before August 10, 1990, unless [the Board] within that time period commences appropriate and legally mandated procedures to revoke petitioner's parole...."

Both parties attempted to comply with Judge Byrnes' order, but from a reading of the transcript it is obvious that form got in the way of substance. Patuxent offered legally sufficient evidence to show that as a result of Hancock's voluntary conduct subsequent to the earlier recommendation for parole, he was no longer eligible for parole because he longer qualified as an eligible person and had been transferred to the Division of Corrections, and because he would pose a danger to the community if released on parole. Yet, the Court of Special Appeals reversed the Board's refusal to release Hancock on parole on the grounds that Hancock had not been shown to have violated any specific condition of parole of which he had been made aware.

If the parties had concentrated on the substance of Judge Byrnes' order, it would have been clear that intervening conduct by Hancock which disqualified him from parole was to be considered, as well as conduct that violated specific

conditions of parole which hypothetically would have been imposed.

In *Matthews v. State,* 304 Md. 281, 292, 498 A.2d 655 (1985), this Court held that

> a trial court has the authority to revoke probation for criminal acts committed after the imposition of sentence but before service of probation based on a condition implicit in the grant of probation that the defendant obey all laws. (Footnote omitted.)

The requirement that a defendant obey all laws is not the only condition implicit in a grant of probation or parole. Equally implicit in the grant of parole from Patuxent Institution would be the conditions that the inmate remain legally eligible for parole status, and that parole of the inmate "will not impose an unreasonable risk on society...." Maryland Code (1957, 1990 Repl.Vol.) Art. 31B, § 11(b)(2). These are conditions "so basic and fundamental that any reasonable person would be aware of such condition[s]." *Matthews v. State, supra,* 304 Md. at 291, 498 A.2d 655 (quoting *Brooks v. State,* 484 P.2d 1333, 1334 (Okl.Cr.App.1971)).

In the instant case two absolutely unequivocal conditions to the grant of parole existed by virtue of statute; there was no need to set them forth in a parole order, because without those conditions being met there could be no parole order. Those conditions, established by Art. 31B, § 11(b) were that: 1) the person to be paroled is an eligible person confined at Patuxent Institution; and 2) the parole of that person "will not impose an unreasonable risk on society." Article 31B, § 11(b)(2). The "Request for Parole Revocation Warrant" alleged that Hancock's conduct had resulted in an earlier finding by the Board that Hancock was no longer an eligible person, and because of his conduct he "is seen as posing a threat to the safety of the community...." The evidence of record is sufficient to support both allegations.

Dr. John Farrell testified in opposition to the proposed parole. He conducted therapy for Hancock's group, both before and after Hancock was on work release. In order to understand some of the concerns expressed by Dr. Farrell, it is necessary to know something of the nature of the offense for which Hancock was convicted.

On 29 February 1976 Hancock broke into the victim's apartment when she was temporarily absent, intending to bind her three children and then sexually assault her when she returned. The victim returned after Hancock had bound one of the children. He then bound and gagged the victim and removed her clothing. The victim managed to remove the gag and began to scream. Hancock panicked, and with a hammer he found in the kitchen, beat the victim so badly that she later died. When the 11–year–old child of the victim attempted to come to the aid of his mother, Hancock struck the child 27 or 28 times, inflicting massive and permanent brain damage.

Dr. Farrell was concerned about Hancock's failure to express remorse, particularly for what he had done to the child. Hancock apparently told Dr. Farrell in therapy that he had "backhanded" the child during the criminal incident. Dr. Farrell was also concerned about Hancock's refusal to address the sexual aspect of his crime. Dr. Farrell said that in therapy Hancock insisted on presenting the offense as an impulsive act, arising from anger he felt because the victim had spoken sharply to him, and not involving a sexual component. The psychologist noted that Hancock had brought tape and cord from his home to the victim's apartment, which indicated prior cognitive activity and probable sexual fantasizing. He also noted that when Hancock had been examined at Clifton T. Perkins Hospital, the doctors found "indications of sexual sadism." Dr. Farrell felt that Hancock's refusal to come to grips with the true facts of the crime, and with his motive to commit it, precluded successful therapeutic treatment. For this and other reasons, he also concluded that Hancock constituted "a threat to public safety." Moreover, he testified that an

independent psychological examination of Hancock had been conducted subsequent to his removal from work release, and the examining psychologist found Hancock to be dangerous at that time.

The Court, although agreeing with the Court of Special Appeals that Hancock should not be denied parole for failure to conform to a rule of which he had no adequate notice, recognizes that "parole may be rescinded even before its physical service has begun, if the parolee has violated the law ... or ... for misconduct which makes it apparent that the parolee is presently unworthy of parole." Court's opinion at 592. The Court also correctly concludes that "[a]n allegation that the respondent has engaged in such misconduct, because he has already been paroled, must be tested by a prompt hearing." *Id.* at 592. My concern is that the Court may be viewing "misconduct" too narrowly.

The Court suggests that "misconduct which makes it apparent that the parolee is presently unworthy of parole" must be determined only from "a review of the institutional records to determine whether the respondent has engaged in such misconduct." *Id.* at 592. In so doing, the Court may be suggesting that only recorded infractions may properly be considered. For reasons I have pointed out, conduct short of an infraction, whether labeled misconduct or not, which persuades the Board that Hancock's release will impose an unreasonable risk on society, will not only justify, but indeed compel, denial of parole. The same situation would be presented if, for example, Hancock had disclosed in the course of therapy that he intended to kill the victim's son if he were released. This statement might not be considered "misconduct" or an "infraction," but it most certainly would indicate that the inmate should not be paroled. Any conduct on the part of the inmate subsequent to the initial recommendation of parole, and for that matter any newly discovered information coming to the attention of the Board subsequent to that time, which would indicate that Hancock is currently dangerous, must be considered.

Moreover, I disagree with the Court that at the hearing to be held the Board may not consider whether Hancock is an eligible person, and therefore eligible for parole. The Court reaches that conclusion on the basis of equitable estoppel, which I do not find applicable. The Board was merely trying to follow the hypothetical framework established by Judge Brynes' order of 24 July 1990. The real substance of that order was to determine whether Hancock had "engaged in conduct since the initial parole decision ... that would militate against his release on parole at this time." If Hancock has engaged in conduct since the initial parole decision that has lawfully [1] caused him to lose his status as an eligible person, he not only should not be granted parole, he cannot be granted parole by the Board. Article 31B, § 11(b). That is a matter the Board must be permitted to consider, and the consideration of such an issue is consistent with Judge Byrnes' order.

When this case is remanded, the notice given Hancock should be amended to include the allegations of violation of the implicit, and statutorily required, conditions I have discussed, and these matters should be considered at the new hearing.

---

**1.** Hancock informs us that by two actions filed in the Circuit Court for Howard County he has challenged Patuxent Institution's determination that he is no longer an eligible person, on the ground that he was not afforded procedural due process in the course of that determination. Proceedings in those cases were stayed pending the outcome of this appeal. After remand, the stay should be lifted and those cases should be promptly resolved. If Hancock prevails in those cases, parole could not be denied on the basis that Hancock is no longer an eligible person; on the other hand, if the action of the Board is affirmed in those cases, Hancock's loss of status as an eligible person should bar his release on parole.