Byron D. TIPPINS, Petitioner,

v.

Dennis LUTHER, Warden, FCI McKean and United States Parole Commission, Respondents.

Civ. A. No. 92–223 E.

United States District Court, W.D. Pennsylvania.

Nov. 29, 1994.

Byron D. Tippins, pro se.

Robert L. Eberhardt, Asst. U.S. Atty., Pittsburgh, PA, for respondents.

### MEMORANDUM ORDER

COHILL, District Judge.

Petitioner's petition for writ of habeas corpus was received by the Clerk of Court on May 22, 1992, and was referred to United States Magistrate Judge Ila Jeanne Sensenich for report and recommendation in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

The magistrate judge's report and recommendation, filed on October 14, 1994, recommended that the petition be denied. The parties were allowed ten (10) days from the date of service to file objections. Service was made on petitioner by delivery to the Federal Correctional Institution at McKean, where he is incarcerated and on respondents. No objections have been filed. After review of the pleadings and documents in the case, together with the report and recommendation, the following order is entered:

IT IS HEREBY ORDERED that the petition is denied.

The report and recommendation of Magistrate Judge Sensenich, dated October 14, 1994, is adopted as the opinion of the court.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

SENSENICH, United States Magistrate Judge.

#### I. RECOMMENDATION

It is recommended that the petition for writ of habeas corpus be denied.

#### II. REPORT

Petitioner Byron D. Tippins (petitioner), a prisoner at the Federal Correctional Institution in McKean, Pennsylvania, brings this habeas corpus action pursuant to 28 U.S.C. § 2241, challenging an August 28, 1991 deci-

sion of the United States Parole Commission (Commission) rescinding his parole.

### Procedural History

Petitioner was paroled on April 20, 1987. He was to remain under parole supervision until February·20, 1999. He was originally convicted on May 19, 1981 in the U.S. District Court for the Southern District of Georgia of the offense of bank robbery. He received an eighteen-year term of imprisonment.

By letter, dated September 26, 1988, petitioner's probation officer informed the Commission that petitioner had violated the conditions of his release. Specifically, petitioner's probation officer informed the Commission that petitioner had changed his residence without notifying the probation office, that he failed to submit monthly supervision reports, and that he was arrested on two separate occasions. In regard to the first arrest, he was found guilty of use of a motor vehicle without authority. In regard to the second arrest, petitioner was charged with possession of heroin with intent to distribute. Petitioner's probation officer also reported that petitioner had tested positive for cocaine. The probation officer recommended that a warrant be issued for petitioner's arrest.

On October 6, 1988, the Commission issued a warrant for petitioner's arrest. Petitioner was arrested on November 1, 1988. By letter, dated November 15, 1988, the Commission informed petitioner that probable cause had been found to believe that he violated the conditions of his parole. Petitioner received a revocation hearing on December 8, 1988. His parole was revoked on January 12, 1989. He was not given credit for any of the time he spent on parole and he was continued to a presumptive parole, June 4, 1991, after the service of 34 months. He appealed the decision to the Commission's National Appeals Board. The National Appeals Board affirmed the Commission's decision on April 25, 1989. On January 10, 1991, the Commission informed petitioner that there was no change in his case and that his presumptive parole date of June 4, 1991 was an effective parole date.

On March 8, 1991, petitioner escaped from a halfway house. After his return to federal custody, he received a hearing before a disciplinary hearing officer on August 8, 1991. He had received notice of this hearing on July 25 or 26, 1991. He stated that his reason for escaping was a urine test taken on February 20, 1991, in which he tested positive for cocaine. The recommendation was that petitioner's parole be rescinded.

The Commission was not aware of petitioner's escape status or his positive urine test until his rescission hearing on August 28, 1991. There was no order retarding his June 4, 1991 parole date, but there had also been no delivery of a parole certificate to him. In the hearing summary, the hearing examiners noted that either the Bureau of Prisons failed to notify the Commission or the Commission took no action due to the change in location of the Commission's Northeast Regional Office from Philadelphia, Pennsylvania, to the Washington, D.C. area. The hearing panel offered petitioner an opportunity to continue his hearing for two months so that the appropriate notice of action could be issued and he could prepare for the hearing based on the two misconducts. He chose to proceed with his hearing.

The hearing panel reviewed the charged with petitioner. He admitted to both charges of use of narcotics and escape from the halfway house. However, he stated that he had returned to federal custody on March 15, 1991, and not on March 27, 1991, as reflected in the records of the Bureau of Prisons. The panel chose to rely on the information contained in the Bureau records rather than petitioner's claim. The panel recommended that his case be reopened and that his parole effective date of June 4, 1991 be rescinded. The hearing panel recommended that petitioner be continued to a presumptive parole of June 21, 1993, after service of an additional 24 months plus 18 days in escape status. The Commission concurred with the hearing panel's recommendation and issued a Notice of Action to petitioner on October 9, 1991. Petitioner appealed the decision to the National Appeals Board. The National Appeals Board affirmed the Commission's decision on February 10, 1992.

Petitioner previously filed an application for writ of habeas corpus in the U.S. District Court for the District of Massachusetts complaining that he had not received a rescission hearing. By order, dated November 29, 1991, the court dismissed his claim as moot since he had received a hearing on August 28, 1991.

On August 28, 1992, the Commission reopened petitioner's case and granted parole effective November 10, 1992, after recalculating the amount of time he was in escape status. That recalculation resulted in a change in the applicable escape guidelines.

On May 22, 1992, petitioner filed the instant petition for a writ of habeas corpus. In this petition, petitioner raises the following issues:

(1) That the Parole Commission failed to violate me even as a I went to the parole hearing in August.

(2) That I was not given credit for time served while in Middleton Correctional Facility.

(3) That they Failed to conduct the pliminary [sic] hearing within the appropiate [sic] time period, it was 100 days before I had my initial hearing.

(4) That the Parole Commission failed to conduct a revocation/recession [sic] hearing within the statutory time period, it was over 165 days before I was given a revocation hearing/recession [sic] hearing.

(5) That the initial hearing in the halveway [sic] house was void, because the investigating officer can not be the one that makes tbe [sic] recommendation also.

*Exhaustion*

"A federal prisoner ordinarily may not seek habeas corpus relief until he has exhausted all available administrative remedies." *Bradshaw v. Carlson,* 682 F.2d 1050, 1052 (3d Cir.1981) (citing *Arias v. United States Parole Comm'n,* 648 F.2d 196 (3d Cir.1981); *United States ex rel. Sanders v. Arnold,* 535 F.2d 848, 850 (3d Cir.1976); *Soyka v. Alldredge,* 481 F.2d 303 (3d Cir.1973)). In this case, petitioner appealed the Commission's August 28, 1991 decision to the National Appeals Board, which affirmed the Commission's decision on February 10, 1992. Therefore, petitioner has exhausted his administrative remedies and the Court may turn to the merits of the petition.

*Discussion .*

A. *Failure of Commission to Revoke Parole*

■ By a Notice of Action, dated January 10, 1991, petitioner was granted a parole effective date of June 4, 1991. "When an effective date of parole has been set by the Commission, release on that date is conditioned upon continued satisfactory conduct by the prisoner." 28 C.F.R. § 2.34(a)(1993). "A grant of parole shall not be deemed to be operative until a certificate of parole has been delivered to the prisoner." 28 C.F.R. § 2.29(a). If a prisoner is found in violation of institution rules, the Commission "may reopen the case and retard the parole date for up to 90 days without a hearing, or schedule a rescission under this section on the next available docket at the institution or on the first docket following return to a federal institution from a Community Treatment Center or a state or local halfway house." 28 C.F.R. § 2.34(a).

In February, 1991, petitioner was placed in a halfway house in preparation for his return to the community. However, he failed to obey the rules of the halfway house by testing positive for the use of cocaine and subsequently escaping. Since he escaped in March of 1991, he did not receive a certificate of parole when his "effective date" of June 4, 1991 arrived. Thus, he never became a parolee. After his return to Bureau of Prisons custody as an escaped prisoner, a hearing was conducted at the halfway house by a disciplinary hearing officer. However, the Commission was not made aware of his misconduct until the date of his rescission hearing in August, 1991. He was offered the opportunity to continue his hearing so that the Commission could issue the appropriate notice of action retarding his parole effective date. He chose to proceed with the hearing. Subsequently, the Commission rescinded his parole and he was informed of the decision by a Notice of Action, dated October 9, 1991.

Petitioner clearly was not released on parole. The type of hearing conducted in his case was a rescission hearing to reopen and retard his parole date following a violation of institutional rules or charges of new criminal conduct. Therefore, the Commission cannot have erred in failing to "revoke" petitioner's parole at a rescission hearing. Whether a parole rescission entitles petitioner to due process protection (and if so, the degree of protection afforded) will be discussed below.

### B. *Credit for Time in Local Facility*

■ Since petitioner was not paroled and escaped while he was still a prisoner awaiting parole, the time he spent in the county jail after he was arrested for escape was counted toward his federal sentence. The Notice of Action, dated October 9, 1991, informed him that the Commission had added 24 additional months to his parole date of June 4, 1991, plus time in escape status. Although the time petitioner spent in county jail from March 15, 1991, to July, 1991, is counted as time toward his federal sentence, the Commission does not have to make that time part of the penalty since it was simply part of the 34 months originally required by the June 4, 1991 date. The 34 months was the penalty for the original parole violation in 1988. Petitioner has no basis for having part of that time credited to the 24–month penalty that was added to the original 34 months as a result of his escape.

When the Bureau of Prisons informed the Commission that the date petitioner was returned to federal custody (*i.e.,* to the county jail) after his escape from the halfway house was computed incorrectly, the Commission corrected its records accordingly. Petitioner escaped from the halfway house on March 8, 1991, and was returned to federal custody on March 15, 1991, and not March 27, 1991, as reflected in Bureau records. Therefore, petitioner's full-term date was revised to reflect credit of twelve days.

### C. *Due Process in Rescission Hearings*

■ Petitioner asserts that the Commission failed to provide him with due process in various respects: time of preliminary hearing, time of parole rescission hearing, and fairness of preliminary hearing because the investigating officer was the same individual who made the recommendation. These due process concerns raise an issue of first impression within the Third Circuit. However, recent opinions of the United States Supreme Court and various other courts of appeals provide this Court with sufficient background to make an informed decision as to how the Court of Appeals for the Third Circuit would evaluate this situation.

Since *Morrissey v. Brewer,* 408 U.S. 471, 484, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972), the Supreme Court has held that the possible deprivation of liberty inherent in a parole revocation proceeding entitles a parolee to certain due process protections. "The Court ruled that a parolee is entitled to a two-tiered hearing procedure, a preliminary hearing at or near the time of the arrest to determine whether probable cause exists to believe that he has committed a parole violation, and a somewhat more comprehensive hearing prior to making the final parole revocation decision." *Parson v. Edwards,* 709 F.Supp. 548, 551 (M.D.Pa.1988) (citing *Morrissey,* 408 U.S. at 485–89, 92 S.Ct. at 2602–04). *See also Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973); *Bond v. Fulcomer,* 864 F.2d 306, 307 n. 1 (3d Cir.1989).

The Supreme Court has never addressed the issue of whether due process protections apply when a parole commission rescinds a prisoner's grant of parole. The Commission refers the Court to decisions of courts of appeals from other circuits for the proposition that "[u]ntil a parole is finalized, no constitutional protections associated with a parole *revocation* embrace the intended parolee." *Sexton v. Wise,* 494 F.2d 1176, 1178 (5th Cir.1974). *See also Ready v. United States Parole Comm'n,* 483 F.Supp. 1273, 1278 (M.D.Pa.1980).

On the other hand, the Court of Appeals for the Second Circuit reviewed this issue in detail and held that "a federal prisoner whose date of parole has been approved but who has not yet been released from prison (a parole grantee) is entitled to procedural due process in his rescission hearing." *Drayton v. McCall,* 584 F.2d 1208, 1209 (2d Cir.1978). The court reviewed the parole commission's

regulations governing when parole may be rescinded and then held that:

> Because the Commission, by these regulations, has limited to carefully defined situations its own authority to rescind a parole grant, there is no resemblance to cases such as *Montanye* [*v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) ], *Meachum* [*v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) ], and others where the Government was in essence not bound by any criteria in engaging in various types of conduct. The regulatory structure, therefore, justifies the parole grantee's expectation of future liberty under the Supreme Court's recent rather formalistic emphasis on governmentally established entitlements. A grantee's entitlement of course, cannot be withdrawn without due process of law.

*Id.* at 1215–16 (footnotes omitted). The court concluded that a parole grantee is entitled to some, but not all, of the due process protections afforded to a parolee at a parole revocation hearing. *Id.* at 1218–20.

Subsequently, the Supreme Court analyzed some related parole due process questions, and the Second Circuit revisited its decision in *Drayton*. In *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Supreme Court addressed the issue of whether state prisoners who had not been given release dates had a liberty interest in having the parole board set those dates entitling them to due process protection. The Court held that "[t]here is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Id.* at 9, 99 S.Ct. at 2104. Because prisoners who had not received a parole date had at most only the possibility of parole, "the general interest asserted here is no more substantial than the inmate's hope that he will not be transferred to another prison, a hope which is not protected by due process." *Id.* at 11, 99 S.Ct. at 2105. Nevertheless, the Court "accept[ed] [the Nebraska petitioners'] view that the expectancy of release provided in [the Nebraska parole] statute is entitled to some measure of constitutional protection."

*Id.* at 12, 99 S.Ct. at 2106. Because the statute was written in such a way as to direct that a Nebraska prisoner "shall" be given a parole date "unless" certain conditions are met, the Court inferred in the statute a liberty interest entitled to some due process protection. *Id.* at 11–12, 99 S.Ct. at 2105–06. *See also Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (protectable liberty interest created by Montana statute requiring that a prisoner "shall" be released when certain conditions are met).

In *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), Connecticut prisoners argued that, based on the statistical frequency with which the Connecticut Board of Pardons had in the past commuted life sentences, they had a protectable interest in similar treatment. The Court disagreed, holding that "[t]he Connecticut commutation statute, having no definitions, no criteria, and no mandated 'shalls,' creates no analogous duty or constitutional entitlement." *Id.* at 466, 101 S.Ct. at 2465.

In *Jago v. Van Curen*, 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981), the Supreme Court addressed the issue of the Ohio Adult Parole Authority's rescission, without a hearing, of its decision to grant a prisoner early parole. The Court held that "[w]e think that the reasoning of *Greenholtz, Dumschat,* and the Court of Appeals' own concession that Ohio law creates no protected 'liberty' interest, require reversal of the holding of the Court of Appeals that [Van Curen] was entitled to a hearing prior to denial of his parole. . . ." *Id.* at 21, 102 S.Ct. at 36.

In *Green v. McCall*, 822 F.2d 284 (2d Cir.1987), the Second Circuit reviewed its decision in *Drayton* in the light of the intervening Supreme Court decisions. The Court determined that:

> Though the regulations in effect when *Drayton* was decided have since been modified, the pertinent changes have not been substantial. The Commission's rescission authority remains limited, as 28 C.F.R. § 2.34(a) (1986) provides that the Commission may reconsider the parole grantee's early release date if the parole grantee has been found to have violated institutional

rules or is alleged to have committed a new criminal act.... Thus, unless *Drayton* has been undermined by later cases, its ruling that a parole grantee is entitled to due process in a rescission hearing remains the law of this Circuit.

*Id.* at 287–88. In reviewing the Supreme Court's decision in *Greenholtz,* the court held that:

Given both the factual differences between *Greenholtz* and *Drayton* and the *Greenholtz* Court's analytical framework, we think *Greenholtz* supports, rather than undermines, *Drayton's* conclusion that parole grantees have a protectable liberty interest. First, though the liberty interest of a federal parole grantee is not as substantial as that of a parolee, it is far more substantial than that of the *Greenholtz* prisoners. We perceive a continuum that includes the liberty interests attributable to, in descending order, the parolee, the parole grantee, and the inmate without a parole date ("non grantee"). Since the *Greenholtz* Court, and more recently the Court in *Board of Pardons v. Allen,* accepted the proposition that inmates for whom no parole date had been set could have some protectable interest, we are hard pressed to believe that that Court would not also find that a protectable interest is possessed by an inmate whose release date has already been set and is less than six months away.

*Id.* at 289. The court concluded that "*Drayton's* liberty interest analysis remains valid in light of the intervening case law." *Id.* at 290.

Although the district court for the Middle District of Pennsylvania found that parole grantees are not entitled to due process protection if the Commission decides to rescind a prisoner's parole, the *Ready* decision was issued prior to the Supreme Court's holdings in *Jago, Dumschat,* and *Allen* and the Second Circuit's re-examination of the *Drayton* decision in *Green v. McCall.* Therefore, the Court should hold that petitioner was entitled to at least some due process protections in his parole rescission hearing, although not the full panoply of protections he would have received at a parole revocation hearing.

■ Although the degree of due process protection available to petitioner at a parole rescission hearing has not been settled, it cannot be more than the degree of protection available to him at a parole revocation hearing. When the Commission fails to provide a timely revocation hearing, there must be "first a showing that the delay was unreasonable, and then a showing of prejudice." *Smith v. United States,* 577 F.2d 1025, 1028 (5th Cir.1978). *See also Bryant v. Grinner,* 563 F.2d 871, 872 (7th Cir.1977).

There is no statutory time deadline for rescission hearings. The rule at 28 C.F.R. § 2.34(a) only requires a hearing "on the next available docket at the institution or on the first docket following return to a federal institution from a Community Treatment Center or a state or local halfway house." Petitioner was returned to Federal Correctional Institution at McKean on July 15, 1991. His hearing was on the "next available docket" on August 28, 1991. According to the regulations, petitioner's hearing was timely. Indeed, even applying the ninety-day rule for revocation hearings (28 C.F.R. § 2.49(e)), petitioner's hearing would have been timely.

Moreover, even if petitioner had not received a timely hearing, petitioner has failed to demonstrate that he was prejudiced by the hearing he did receive on August 28, 1991. *See Smith v. United States,* 577 F.2d 1025 (5th Cir.1978) (due process entitles inmate only to an order to conduct hearing); *Bryant v. Grinner,* 563 F.2d 871, 872 (7th Cir.1977) (remedy for late hearing is a hearing); *United States v. Companion,* 545 F.2d 308 (2d Cir.1976); *Heezen v. Daggett,* 442 F.2d 1002 (8th Cir.1971).

Petitioner has failed to show any prejudice from holding his rescission hearing on August 28, 1991. At his hearing, he admitted to the violations of drug use and escape from the facility. Petitioner has not pointed to any unfairness in the hearing which could have prejudiced his case, including his allegation that the initial hearing was void because the investigating officer was the same individual who recommended rescinding petitioner's parole.

Therefore, although the Court should find that petitioner was entitled to some due process protections at his parole rescission hearing, petitioner has failed to demonstrate that the Commission did not provide him with an adequate hearing under the circumstances.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.

Dated: October 14, 1994.